342 F.2d 244
 Harold KODACK, Plaintiff-Appellee,
v.
The LONG ISLAND RAIL ROAD COMPANY, Defendant and Third-Party
Plaintiff-Appellant, v. Marvin G. COURSEY,
Third-Party Defendant. Action No. 1.
Harold KODACK, Plaintiff,
v.
Marvin G. COURSEY, Defendant and Third-Party
Plaintiff-Appellee, v. The LONG ISLAND RAIL ROAD
COMPANY, Third-Party
Defendant-Appellant. Action No. 2.
Marvin G. COURSEY, Plaintiff-Appellee,
v.
The LONG ISLAND RAIL ROAD COMPANY, Defendant-Appellant.
 Action No. 3.
 No. 340, Docket 29284.
 United States Court of Appeals Second Circuit.
 Argued Feb. 18, 1965.
Decided March 11, 1965.
 
 William F. McNulty, New York City (George M. Onken, Jamaica, N.Y., on the brief), for appellant.
 Isidore Halpern, Brooklyn (Frederick Travers, John D. Calamari, Martin Fogelman, New York City, of counsel), for appellee Kodack.
 David Farber, New York City (Jerome A. Gottlieb, New York City, on the brief), for appellee Coursey.
 Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.
 HAYS, Circuit Judges.
 
 
 1
 This appeal involves three actions arising out of the collision at an unguarded grade crossing of a passenger train of the appellant railroad with a tractor-trailer combination owned and driven by Coursey. Kodack, an employee of the railroad acting as rear brakeman or flagman on the train, brought an action against the railroad under the Federal Employers' Liability Act[1] for injuries sustained when he was thrown to the floor of the last car, a passenger coach, by the impact of the collision. The railroad impleaded Coursey in this action. Kodack, a citizen of New York, sued Coursey, a citizen of Florida, on a common-law cause of action for negligence (Action #2) and Coursey impleaded the railroad, which counterclaimed for damage to its diesel locomotive. In Action #3 Coursey sued the railroad for injuries to his person and property and the railroad again counterclaimed in this action for its property damage. After nine days of trial the jury returned a special verdict in answer to six interrogatories framed by the trial judge. The jury verdict was that 'negligence of the railroad was a proximate cause of the collision,' that it was not proved that Coursey was negligent but also that he had not proved himself free of contributory negligence, and that Kodack had suffered damages of $100,000. The court thereupon dismissed all the claims except Kodack's FELA claim against the railroad in which Kodack was awarded $100,000.
 
 
 2
 The railroad raises three issues on appeal: (1) that the evidence of its negligence was insufficient to justify submission to the jury, (2) that the trial court should have declared a mistrial because of prejudicial remarks by Kodack's counsel in his opening statement, and (3) that the court erred in withdrawing the issue of Kodack's contributory negligence from the jury. We are not persuaded that there was error and affirm the judgment of the district court.
 
 
 3
 Kodack made two specific charges of negligence against the railroad: the failure of the train to give timely warning by whistle as it approached the unguarded grade crossing and the speed of the train which he claimed violated company rules and was excessive in view of the conditions at the crossing.
 
 
 4
 The railroad claims that the collision resulted wholly from the negligence of Coursey.
 
 
 5
 The collision occurred where Kroemer Avenue, a dirt road running north and south, crosses the railroad's east-west line about halfway between Calverton and Riverhead, New York, on the eastern end of Long Island. On either side of the main track is a spur track. The northern spur runs about 33 feet north of the main line at Kroemer Avenue. The only safeguards at Kroemer Avenue were two large wooden crossbuck warning signs about fifteen feet north and south of the spur tracks. The railroad had a whistle post 1,446 feet west of the crossing designating the point at which a passing train was required to blow the standard long-long-short-long crossing whistle.
 
 
 6
 Although the terrain at the main track crossing was flat and the track straight, and visibility along the track at the intersection unobstructed, a highway bridge crossed the track about 739 feet west of the crossing and its approaches obstructed the view west from Kroemer Avenue of one approaching the railroad from the north.
 
 
 7
 There was a railroad crossing sign about 15 feet north of the north spur track and about 50 feet north of the main line. Coursey, who had approached the crossing from the north, testified that he stopped at the sign and looked east and west before he started across the intersection. His view west along the line from that point would have been, according to the railroad's witness, only about 900 feet because of the highway bridge and approaches. He testified that he did not see any trains nor hear any whistle until he reached the main track. His truck was in first gear, of ten forward gears, and he was traveling, according to all the witnesses, no more than five miles per hour.
 
 
 8
 The testimony establishes that the train was proceeding from the west at more than sixty miles per hour. Kodack himself testified that the train's speed was 75 miles per hour. (The railroad's prescribed maximum speed was 65 miles per hour.) All the witnesses testified that warning whistles were sounded as the train approached the crossing. There was considerable dispute, however, over whether the whistle was blown at the whistle point or only as the train was almost at the crossing. Coursey testified that he heard the whistle only as he was crossing the main track; others testified that the tractor-trailer was very close to the main track when the whistle first blew.
 
 
 9
 The engineer was sitting in the fireman's seat at the left window of the cab of the diesel locomotive. There were a number of inconsistencies in his testimony as to where the train was when he first saw Coursey's rig. But it is clear that he first gave warning of danger ahead to the fireman, who was at the throttle, when the train was only thirty feet from the crossing, only then ordering the fireman to apply the emergency brake.
 
 
 10
 The locomotive struck the trailer, propelling it to the left of the crossing and the tractor to the right of the crossing where it was overturned with Coursey in it.
 
 
 11
 Kodack was walking toward the rear of the last car when the impact occurred. He was thrown to the floor and lost consciousness momentarily. He sustained severe back injuries for which he was hospitalized and which now prevent him from following his regular occupation.
 
 
 12
 Review of the extensive evidence and exhibits at the trial reveals no grounds for setting aside the jury's finding that the railroad's negligence proximately caused the collision. The jury could properly find that the railroad failed to meet the standard of care required under the Federal Employers' Liability Act. See Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957) ('Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'); Ratigan v. New York Cent. R.R., 291 F.2d 548, 553 (2d Cir.), cert. denied sub nom. New York Cent. R.R. V. Interstate Commodities, Inc., 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961) ('In these FELA cases the railroad employee is to be given the benefit of every doubt.').
 
 
 13
 The railroad's second issue on appeal involves a short remark made by Kodack's counsel in his opening statement:
 
 
 14
 'At the very outset I desire that you know that Harold Kodack brings this action against Long Island Rail Road Company under the Federal Employers Liability Act. He has no compensation rights-- '
 
 
 15
 Counsel for the railroad immediately objected and moved for a mistrial. Judge Bryan denied the motion but told the jury 'to wipe that (remark) out of your minds entirely,' briefly admonished Kodack's counsel, and instructed the jury that Kodack's rights under FELA were to be 'determined on the assumptions of law, as to the effect of that Act that I give you, and nothing else,' to which the jury nodded their heads in the affirmative. Although it was inexcusable for Kodack's experienced trial counsel to make such a remark to the jury, the remark itself was not so prejudicial under the circumstances as to justify a reversal. Coming as it did at the very outset of a nine-day trial and being immediately countered by the careful admonition of the trial judge, its adverse effect was surely dissipated by the time the jury came to consider its verdict. See Lanni v. Wyer, 219 F.2d 701 (2d Cir. 1955).
 
 
 16
 The third point on which the railroad appeals is the trial judge's withdrawal from the jury of the issue of employee Kodack's contributory negligence. The pretrial order stated that the railroad contended that Kodack 'as an experienced trainman when he heard an emergency application of the brakes * * * should have taken steps to brace himself in order to avoid being thrown to the floor of the car * * *' However, the railroad failed to adduce evidence that there was sufficient warning before the impact to permit Kodack to act. The engineer testified he told the fireman to apply the brakes about thirty feet from the collision, which, given the train's speed, was one-third of a second. Even assuming that the fireman's reaction and the operation of the air brakes were instantaneous, the time lapse before the collision could not have been sufficient to give even an experienced trainman time to brace himself.
 
 
 17
 Affirmed.
 
 
 
 [1]
 35 Stat. 65 (1908), as amended, 45 U.S.C. 51-60 (1958)