CROUSE, ᴇᴛ ᴀʟ. *v.* HAGEDORN

[No. 231, September Term, 1968.]

*Decided May 30, 1969.*

The cause was argued on April 8, 1969 before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN and SMITH, JJ. and reargued on April 28, 1969 before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Edwin H. Miller* (on both arguments), with whom were *Miller, Miller & Kuczynski* on the brief, for appellants.

*Daniel W. Moylan* and *John H. Urner* (on first argument), with whom were *Bushong, Byron, Moylan & Urner* on the brief. Reargued by *Daniel W. Moylan,* for appellee.

SMITH, J., delivered the opinion of the Court. McWILLIAMS, J. dissents.

This case grows out of an accident near Hancock in Washington County. Appellant (Crouse) was the plaintiff in the Circuit Court for Washington County. Appellee (Hagedorn) was the defendant. After trial before a jury on which issues were submitted a judgment was entered in favor of Hagedorn. Motion was made by Crouse for judgment *n.o.v.* or, in the alternative, for a new trial. The motions were denied. We shall sustain the action of the trial court.

The facts of the case were essentially these: that on November 24, 1965, at approximately 4:45 P.M. Hagedorn was proceeding south on Maryland Route 522 where the road passes over U. S. Route 40 and the Potomac River and enters West Virginia. Crouse was operating plaintiff Compton's tractor-trailer and was hauling 46,000 pounds of coal, also in a southerly direction on Route 522. Crouse testified that he had been following the Hagedorn vehicle for three quarters of a mile before the accident; the accident occurred on a stretch of highway between two bridges and adjacent to a combination service station and restaurant. Crouse testified that the first bridge, over which the two vehicles crossed, was "approximately 350

or more than that, feet" and that "coming on to the bridge Mr. Hagedorn was about five car lengths ahead of me and as I approached the intersection it appeared that Mr. Hagedorn veered right as if he was going down the intersection", (referring to Route 144, which intersects Route 522 on the west side just before the entrance to the restaurant-gas station). Crouse contends that Hagedorn veered right, and slowed, and at that time his vehicle "closed up there to about three truck lengths when he veered off to the right." Crouse contended that both vehicles were traveling at about 30 miles per hour; and that Hagedorn was not slowing down as he came across the first bridge, and did not slow down until he veered right into Route 144. Counsel for Hagedorn asked Crouse about a written statement he made on December 9, 1965. The statement contained an assertion, agreed to by Crouse as being "approximately * * * correct", that "I was running approximately 30-35 m.-p.h." Relative to Crouse's speed, Hagedorn, through State Trooper Snyder, introduced evidence that the speed limit at the accident scene was 30 m.p.h. and may have been 25 m.p.h. at the time of the accident.

Crouse testified that after Hagedorn veered right the distance between the vehicles was reduced to three truck lengths. Hagedorn's car then came back into the south bound lane of Route 522, proceeded slowly 200 feet and stopped, opposite the second entrance of the restaurant-gas station. Crouse said he blew his horn, put on his brakes and swung into the left lane. The relevant testimony on cross examination is as follows:

"Q. You put on your brakes when you swung over into the left lane? A. Yes, sir.

"Q. Wouldn't this mean, Mr. Crouse, that it would take you considerably longer to pass if you tried passing with your brakes on than with them off? A. When I first passed Mr. Hagedorn I had my brakes on but when I got in the left lane I left the brakes off and then again I saw that he was—after I was almost up beside him that he was going to hit the truck.

"Q. You put your brakes on, you went into the passing lane, you took your brakes off? A. Yes, sir.

"Q. And you put your brakes on again? A. Yes, sir, because when he—I thought he was going to set still until I got up almost beside of him."

Crouse testified further that the Hagedorn automobile struck the tractor on its right front, throwing the automobile back against the trailer, which resulted in overturning the truck.

Hagedorn testified that for the entire ¾ mile, i.e. from the ramp before the first bridge to the point of impact before the second bridge, he had intended to turn into the gas station. Hagedorn stated that for the length of the first bridge he applied his brakes intermittently, "for approximately three quarters of a mile ever since I decided to turn into the gas station". Hagedorn made no mention at all of the alleged movements of his car to the right and the alleged return to the southbound lane of Route 522, after Crouse had effectively narrowed the gap between the vehicles to three truck lengths.

Four questions are presented to this Court, namely (1) was the trial court in error in refusing to instruct the jury that the defendant was guilty of negligence as a matter of law, (2) did the trial judge err in refusing to instruct the jury that the proximate cause of the accident was the defendant's negligence in making a left-hand turn from his lane of traffic when unsafe to do so, (3) was there error in refusing to grant two requested instructions of the plaintiff, and (4) was there error in refusing to allow Crouse's counsel to argue to the jury that Hagedorn's operation of his automobile created an emergency justifying Crouse's going to the left of Hagedorn's automobile immediately before the collision. The case was tried on issues. The first issue asked whether Hagedorn was guilty of negligence contributing to the happening of the accident. The jury answered in the affirmative. The second issue asked whether Crouse was guilty of negligence contributing to the happening of the accident. That likewise was answered in the affirmative. The third issue concerned damages of Crouse and the jury was instructed that it was only to answer the third issue if its answer to the first issue was "yes" and its answer to the second issue was "no".

## I

Crouse's complaint that the trial court erred in failing to instruct the jury that Hagedorn was guilty of negligence as a matter of law and that the proximate cause of the accident was Hagedorn's negligence in making a left hand turn from his lane of traffic when unsafe to do so does not rest on solid ground because the jury made a specific finding of contributory negligence on the part of Crouse. It is well settled that where the plaintiff in a suit for personal injury is guilty of contributory negligence, the negligence of the defendant becomes immaterial. *Miller v. Mullenix,* 227 Md. 229, 234, 176 A. 2d 203 (1961); and *Bearings Serv. Co. v. Balto. Transit Co.,* 197 Md. 1, 5-6, 779 A. 2d 779 (1951).

## II and III

Crouse requested an instruction as follows:

"The court instructs the jury that if they shall find from the evidence that the defendant slowed his vehicle to almost a stop without warning to the plaintiff, who was in the following vehicle, the plaintiff, in attempting to avoid a collision, is not held to any higher degree of care than that which an ordinary prudent person would exercise when suddenly placed in a perilous situation and that he is not required to be perfect in anticipation, reaction and action to devise a means whereby the accident could have been avoided, but only by the standard of what an ordinary man would have done under the same circumstances."

The trial court was correct in refusing this instruction. The requested instruction draws a conclusion from the factual situation therein, that is, that these facts alone are sufficient to support a finding essentially that an emergency existed. The instruction then proceeds to state the degree of care required of one acting in an emergency situation.

The instruction is defective for two reasons. First, it states that these facts, if found to be such by the jury, constitute a "perilous situation" and concludes, therefore, that these facts are sufficient to constitute an emergency.

Secondly, the instruction is defective because it is argumentive and assumes the existence of a material fact in controversy, that Crouse was "attempting to avoid a collision" when he directed his truck into the left lane. The facts actually are susceptible to at least two possible interpretations on this point, that Crouse was in fact attempting to avoid a collision or that he was attempting to pass Hagedorn's vehicle, possibly because of impatience.

Crouse claims error by the refusal of the trial court to grant the following instruction:

> "The Court instructs the jury that the fact that the plaintiff Crouse may or could have been traveling in close proximity to the defendant does not of itself constitute negligence. If it appears that the driver of the defendant's vehicle brought it to a sudden stop without giving any warning to a driver following at a reasonable distance, there is no presumption that the plaintiff Crouse, the rear driver was negligent unless he had a chance to stop after the necessity of stopping was apparent. If you find from the facts that the plaintiff Crouse was given no warning and he did all that a normal, ordinary, prudent person would do in order to avoid the collision, then your verdict must be for the plaintiff."

The trial court was correct in refusing to grant this instruction for much the same reasons which support its rulings on the prior requested instructions. The instruction essentially assumed material facts which are in controversy. In addition, there appears to be a conflict within the terms of the instruction itself. The requested instruction states that the fact that Crouse might have been traveling in *close proximity* to Hagedorn does not constitute negligence in itself. It then refers to a driver's following at a *reasonable distance*. The reference to "reasonable distance" is both an assumption of a material fact in controversy and confusing phraseology when considered in light of its context and positioning with reference to the prior phrase *"close proximity"*. Prayers which are ambiguous or confusing to the jury are erroneous. *Wintrobe v. Hart*, 178 Md. 289, 296, 13 A. 2d 365 (1940).

It is to be noted that the trial court in its instructions to the jury did call specific attention, at the request of Crouse, to the provisions of Code (1957) Art. 66½, § 228 stating that a vehicle may not turn from a direct course upon a highway unless and until such movement can be made with reasonable safety and then after giving the signal therein required, as well as the further provision of that section that a person shall not stop or suddenly decrease the speed of his vehicle without first giving an appropriate signal. He further instructed the jury:

> "[T]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

The charge must be considered as a whole, *Atran v. Furness,* 251 Md. 216, 224, 246 A. 2d 767 (1968) and *Wilhelm v. State Traffic Safety Commission,* 230 Md. 91, 185 A. 2d 715 (1962). There was no error in the rejection of these proposed instructions.

### IV

Crouse presents his last point as:

> "Was the Court in error in refusing to allow Plaintiff's Counsel to argue to the Jury that the Defendant's operation of his automobile created an emergency justifying the Plaintiff to go to the left of the Defendant's automobile, immediately before the collision. (See *notation on Defendant's Prayer No. 10)*?" (emphasis added)

Defendant's tenth prayer and the notation to which counsel calls attention are not printed in the record extract. Likewise, nothing is printed showing any ruling by the trial court as to what Crouse's counsel could or could not argue to the jury. We have said many times that this Court will not consider matters not printed in the record extract. *Prime Contractors, Inc. v. Mayor and City Council,* 241 Md. 55, 215 A. 2d 214 (1965); *Silverman v. Ruddle,* 234 Md. 353, 199 A. 2d 196 (1964); *State Roads Commission v. Sharper,* 231 Md. 411,

190 A. 2d 647 (1963). Moreover, there was no emergency instruction before the jury. It is, of course, the duty of counsel in their argument before the jury to keep within the record and the instructions of the court to the jury. As far back as 1887 Chief Judge Alvey in *B. & O. R. Company v. Boyd,* 67 Md. 32, 10 A. 315 (1887) said for this Court:

> "Counsel can never be permitted to argue to the jury against the instructions of the court, nor to indulge in any line of argument or comment that would tend to induce them to disregard the instructions given for their government." *Id.* at 43.

See also *Cit. Mut. Fire Ins. Co. v. Conowingo Bridge Co.,* 116 Md. 422, 440, 82 A. 372 (1911).

*Judgment affirmed; appellants to pay the costs.*