824 A.2d 966

**CSX TRANSPORTATION, INC.**

v.

**Francis L. HAISCHER.**

**No. 1716, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

April 30, 2003.

Reconsideration Denied June 25, 2003.

**148**

**150**

Douglas Murray (Stephen B. Caplis, on brief), Baltimore, for appellant.

David S. Schnitzer (Bondurant & Appleton, P.C., on brief), Portsmouth, VA, for appellee.

Argued before MURPHY, C.J., DEBORAH S. EYLER, SHARER, JJ.

SHARER, J.

Following a jury trial in the Circuit Court for Baltimore City, a verdict was returned in favor of Francis L. Haischer, appellee, against his employer, CSX Transportation, Inc. ("CSXT"), appellant. In this appeal, CSXT presents the following questions for review:

I. Was the evidence presented insufficient as a matter of law to prove a violation of the Boiler Inspection Act, 49 U.S.C. § 20701?

 A. Was there legally sufficient evidence that the locomotive parts and appurtenances were not in proper condition?

 B. Was there legally sufficient evidence that the locomotive, its parts and appurtenances, were unsafe to

operate without unnecessary danger of personal injury?

II. Did the trial court err by failing to permit CSXT to introduce evidence regarding the annuity payments Haischer is receiving from the Railroad Retirement Board?

More specifically, with respect to the first issue, CSXT suggests (1) that the trial judge erred by not granting its motion for judgment and (2) that the evidence, as to its liability, was insufficient to support the jury verdict. With respect to its second issue, CSXT suggests that the trial court erred by not permitting it to introduce collateral source evidence.

We shall answer the first question in the negative. As to the second, however, we agree with CSXT and shall reverse and remand for a new trial on damages.

## FACTUAL and PROCEDURAL HISTORY

Haischer brought this action in the Circuit Court for Baltimore City pursuant to the Federal Employers' Liability Act [1] ("FELA") and the Boiler Inspection Act [2] ("BIA"), seeking damages for a personal injury suffered in the course of his employment as a locomotive engineer for CSXT. He dismissed his FELA claim prior to trial and elected to proceed only on the BIA claim.

Haischer was injured on March 1, 2000, while working a regular shift as a locomotive engineer. As he was ascending the stairs from the nose of the locomotive to the cab, he struck his left shoulder on the bottom edge of the cover of the Head Train Device ("HTD") that had fallen open. The door of the HTD cabinet, which was hinged at the bottom and hence opened downward, should have been secured in a closed position by screws along the top edge. However, the screws

---

1. 45 U.S.C. §§ 51–60.

2. 49 U.S.C. § 20701.

had inexplicably come loose, causing the cabinet door to fall open sometime during Haischer's duty hours.

Following the incident, on March 20, 2000, Haischer sought treatment from an orthopaedic surgeon, who diagnosed an acute exacerbation of a preexisting calcium deposit. Surgery disclosed a rotator cuff tear in his left shoulder. After March 1, 2000, Haischer did not return to work at CSXT, nor did he secure employment elsewhere.

Haischer's complaint alleged that he was entitled to compensation because his injury resulted from his employer's violation of the Boiler Inspection Act, 49 U.S.C. § 20701, which provides:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter ... and regulations prescribed by the Secretary of Transportation under this chapter ...; and

(3) can withstand every test prescribed by the Secretary under this chapter....

A jury trial commenced on September 6, 2001, and continued for five days. At the close of Haischer's case, CSXT moved for judgment, contending that the evidence was insufficient to support a finding of a violation of the BIA. CSXT renewed the motion at the close of all the evidence. The trial court reserved ruling on both motions until after the jury verdict (thus, the latter motion effectively became a motion for JNOV). On September 12, 2001, the jury returned a verdict for Haischer, and awarded damages in the total of $203,898.

Thereafter, on October 3, 2001, the trial court issued a memorandum and order denying both CSXT motions, stating:

While this Court questions whether Congress intended for the BIA to impose strict liability on railroad carriers for every malfunction on any piece of equipment appended to a

locomotive, this Court has been cited to no legislative history supporting that interpretation.

Case law supports a liberal, expansive construction of the BIA in favor of railroad workers. In *Lilly v. Grand Trunk Western R. Co.,* 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943), the U.S. Supreme Court stated, "Negligence is not the basis for liability under the Act. Instead, it 'imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate . . . without unnecessary peril to life or limb.'" *Id.* at 485, 63 S.Ct. 347 (citing *Southern Ry. Co. v. Lunsford,* 297 U.S. 398, 401, 56 S.Ct. 504, 80 L.Ed. 740 (1936)). Whether or not the locomotive is unsafe to operate is an issue for the fact finder. *Topping v. CSX Transportation, Inc.,* 1 F.3d 260, 261 (1993). Railroad carriers are strictly liable for resultant injuries, if it is determined that unsafe conditions exist. *Id.* In the present case, a jury has determined that CSXT has violated the BIA by failing to maintain the locomotive in proper condition, safe to operate.

Based on the lack of legislative history and the status of case precedent, CXST's [sic] motions for judgment are denied. Judgment will be entered for [Haischer] in the amount of $203,898.00.

## DISCUSSION

*I. Was the evidence presented insufficient as a matter of law to prove a violation of the Boiler Inspection Act, 49 U.S.C. § 20701?*

■ As we have noted, there is inherent in CSXT's issues the argument that the evidence adduced by Haischer was insufficient to establish a violation of the BIA, and that the trial court erred by not granting either of its motions. Because the same test is applied to our consideration of both of those contentions, we shall discuss them as one.

Essentially, CSXT contends that the evidence presented in Haischer's case was not legally sufficient to prove a violation

of the BIA, and failed to generate a jury question that the locomotive, its parts and appurtenances, (1) were not in proper condition; and (2) were unsafe to operate without unnecessary danger of personal injury.

The appropriate standard of review was set out in *University of Baltimore v. Iz*, 123 Md.App. 135, 716 A.2d 1107 (1998), *cert. denied, Iz v. University of Baltimore*, 351 Md. 663, 719 A.2d 1262 (1998):

> When we review a trial court's denial of a party's motion for judgment in a jury trial, we conduct the same analysis as the trial court. We consider all of the evidence, including the inferences reasonably and logically drawn therefrom, in a light most favorable to the non-moving party. If there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, we may affirm the trial court's denial of the motion. On the other hand, where the evidence is not such as to generate a jury question, *i.e.*, permits but one conclusion, the question is one of law and the motion must be granted. Likewise, when we review [the] denial of a motion for judgment notwithstanding the verdict, we use the same standard as a motion for judgment made during trial. Thus, we assume the truth of all credible evidence and all inferences of fact reasonably deducible from the evidence that supports the non-moving party's position.

*Id.* at 149, 716 A.2d 1107 (internal quotation marks and citations omitted).

The elements of the entitlement to recovery under the BIA are proof by a preponderance of the evidence that the locomotive was (1) not in proper condition; and (2) was not safe to operate without unnecessary danger of personal injury. 49 U.S.C. § 20701. A review of the evidence presented by Haischer is appropriate.

At trial, only two witnesses were called to describe the condition of the locomotive, and the incident that resulted in Haischer's injury—Haischer himself and Rudy Carroll, the conductor working with him at the time.

Both testified that the pathway between the locomotive and the cab where the HTD cabinet is located is narrow and poorly lighted. Neither observed the HTD cabinet door to be open when they began their shift. Both explained that the HTD cabinet door is supposed to be secured in a closed position with screws and that neither removed the screws and, if the screws had been properly tightened and secured, even brushing against the cabinet door would not have caused it to come open. Finally, both testified that the HTD cabinet door did come open at some time during the shift and Haischer struck his left shoulder on the lower edge of the open door as he ascended the narrow stairway above which it was located.

The cornerstone of liability under the BIA was laid down by the United States Supreme Court in *Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943). Lilly had fallen from atop a locomotive tender when a hook that he was pulling gave way, causing him to slip on the icy surface. Among the findings of the jury was the lack of mechanical defect that caused the accumulation of ice. In reversing the grant of JNOV, the Court said:

> Negligence is not the basis for liability under the Act. Instead it "imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate in active service without unnecessary period to life or limb."
>
> * * *
>
> The Act ... is to be liberally construed in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment.

*Id.* at 485–86, 63 S.Ct. 347 (citations omitted).

In *Topping v. CSX Transp., Inc.*, 1 F.3d 260 (4th Cir.1993), the employee was injured when he fell over a piece of loose metal in a locomotive. The piece of metal was not where it should have been and was of unknown origin. Nevertheless, the Fourth Circuit Court of Appeals, after noting that the defenses of contributory negligence and assumption of risk are

not available to a defendant in a BIA case, stated that the facts of that case presented "... a classic jury question whether the presence of the loose metal object rendered the locomotive cab 'unsafe to operate.' " *Id.* at 261.

*Lilly* and *Topping* are controlling of our consideration of whether the evidence was sufficient to allow a jury to determine whether the locomotive was (or was not) in proper condition, and was (or was not) safe to operate without unnecessary danger of personal injury. Haischer's evidence demonstrated that the HTD, an integral part of the operation of the locomotive, had, for some unknown reason, taken on a characteristic that was abnormal to its usual state. The HTD was ordinarily a benign fixture which became, when the cabinet door inappropriately opened, an obstruction which ultimately caused Haischer's injury. As we consider that evidence, including inferences reasonably to be drawn therefrom, in a light most favorable to Haischer, we conclude that the evidence was sufficient to generate a jury question. We find no error, either in the trial judge's decision to allow the case to go to the jury on evidence presented, or the denial of CSXT's motions for judgment.

## II. Did the trial court err by failing to permit CSXT to introduce evidence regarding the annuity payments Haischer is receiving from the Railroad Retirement Board?

CSXT proposed to call Haischer as its witness to elicit testimony from him that he received $2,320 each month from a Railroad Retirement Board annuity. In so doing, CSXT took the position that Haischer's earlier testimony about his diminished financial condition, taken together with evidence of his failure to seek other employment, and considering the comments made by his counsel in opening statement, created an exception to application of the collateral source rule, and "opened the door" to the annuity evidence.

When conducting a trial, a trial judge's "decision to admit or exclude evidence will not be set aside" absent an

abuse of discretion. *Barnes v. Rosenthal Toyota, Inc.*, 126 Md.App. 97, 108, 727 A.2d 431 (1999) (citing *CSX Transp., Inc. v. Continental Ins. Co.*, 343 Md. 216, 252, 680 A.2d 1082 (1996)). In *North v. North*, 102 Md.App. 1, 648 A.2d 1025 (1994), Chief Judge Wilner fully explicated the broadly deferential nature of the "abuse of discretion" standard:

> "Abuse of discretion" is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways. It has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."
>
> There is a certain commonality in all of these definitions, to the extent that they express the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*Id.* at 13–14, 648 A.2d 1025 (internal citations omitted). With that standard in mind, we will review the trial court's ruling to disallow evidence of Haischer's annuity benefits.

■ The collateral source rule, excluding evidence of "damages" paid by a source other than a defendant, was laid down by the Court of Appeals in *American Paving & Contracting Co. v. Davis*, 127 Md. 477, 485, 96 A. 623 (1916). However, evidence of collateral payments is "admissible if there is

evidence in the case of malingering or exaggeration of injury
. . . but is inadmissible if there is no such evidence or if the
question is asked for the real purpose of mitigating the
liability of the defendant." *Leizear v. Butler,* 226 Md. 171,
175, 172 A.2d 518 (1961) (citations omitted); *see also Kelch v.
Mass Transit Admin.,* 42 Md.App. 291, 296, 400 A.2d 440
(1979).

## A. The Opening Statement

■ We look first to CSXT's complaint about Haischer's
counsel's opening statement which, CSXT maintains, implied
to the jury that a recovery in the lawsuit was Haischer's only
means of compensation for his injury, and resulting unemploy-
ment. The aspects of the opening statement to which CSXT
refers are underlined below.

I don't know if you realize how important your role is in this
case. You are also what is known as the "trier of fact" and,
basically, your job is to sit and to listen to all of the
evidence, to look at the exhibits, to watch the witnesses on
the stand, to listen to everything, and then you decide the
conflicts in this case. You are the ones that decide the
outcome of this case and so I would not hesitate to say that
you all are the most important group of people in this room
right now. So I appreciate that.

I would ask you to please take this very seriously. This
is an important time for Mr. Haischer. This is Mr. Haisch-
er, who I represent for injuries that he sustained to his left
shoulder while he was working as an engineer, a locomotive
engineer for CSX Transportation, Incorporated, and *this is
his only day or few days in court and so I would ask you to
remember that, and whatever the outcome is, this is it for
him. If his situation changes five years, ten years down
the road, he's not coming back. This is it for him.*

\* \* \*

And let me digress for a minute and just explain to you
all that there is going to be a focus on money and figures
and damages in this case, and I want to explain to you that

that's one of the quirks of our legal system. If someone bought your house and then decided they didn't want to go through on the contract, you could take them to court and get what is called "specific performance" and force them— have the court force them to buy your house.

When you have a situation like this where someone has suffered an injury and has suffered damages, nothing is ever going to put Mr. Haischer's shoulder back in the position it was prior to this accident. If we could all go back in time and change this so that it never happened, that's what we would do and you all would be on your way and we wouldn't be sitting here, *but the way our legal system works, it's sort of the idea that money damages can compensate someone and make them whole for their injuries.* So there is going to certainly be a lot of talk about figures and disputed figures and what the damages are, and I just want to let you know that's why. That's the way the legal system works.

CSXT first argues that specific statements made by Haischer's counsel in his opening statement were improper because they "clearly implied to the jury that this case was Haischer's only means of any financial compensation for his alleged occupational injury," relying on two cases that found similar jury statements and argument to have been improper in FELA cases. In *Weinell v. McKeesport Connecting R.R. Co.,* 411 F.2d 510 (3d Cir.1969), plaintiff's counsel, in opening statement, said to the jury, "Now this Federal Employers Liability Act provides the only method by which a railroad employee . . . may recover damages or be paid for an on-the-job injury while he was at work for the Railroad." *Weinell, supra,* 411 F.2d at 512. The United States Court of Appeals for the Third Circuit explained that "[t]he sole issue was the Railroad's liability to Weinell under the FELA and the amount, if any, of his recovery." *Id.* Therefore, "[t]he statement was obviously an improper one and should not have been made by Weinell's counsel. . . ." *Id.*

In *Kodack v. Long Island R.R. Co.,* 342 F.2d 244 (2d Cir.1965), in his opening statement, plaintiff's counsel re-

marked: "At the very outset I desire that you know that [plaintiff] brings this action against [the Railroad] under the Federal Employers Liability Act. He has no compensation rights." *Kodack, supra,* 342 F.2d at 247. The United States Court of Appeals for the Second Circuit found the statement "inexcusable" but concluded that the remark "was not so prejudicial . . . as to justify a reversal." *Id.*

At this point we must note that, while CSXT wants us to find the statements to have been improper, no objection was made at the time, although it was argued in support of the motion for judgment at the conclusion of plaintiff's case. Although Haischer has not raised a non-preservation issue, we will nevertheless exercise our discretion under Md. Rule 8–131(a) to review the propriety of the statements.

 Jurors are nearly always strangers to the judicial process. The purpose of opening statement is to fairly apprise them of the issues and the evidence to be presented to them and what, in the end, each of the parties will be seeking of them in terms of a verdict. "In our juridical procedure the purpose of an opening statement is to acquaint the judge and jury with the *facts* that counsel hopes and expects to prove. . . ." *Hartman v. Meadows,* 243 Md. 158, 162, 220 A.2d 555 (1966) (emphasis in original). It is appropriate for counsel to provide an overview of the facts and, in cases of personal injury, to tell the jurors that damages will be sought. It is not unusual, in our experience, for counsel to advise a jury that the client will have but one opportunity to be compensated for his or her damages—that the trial is the plaintiff's "day in court." That is a correct statement of the law (with the exception of workers' compensation, where claimants enjoy the right to re-open a case in the event of a worsening of condition). Plaintiff's counsel in *Weinell* and *Kodack* were much more pointed in their remarks to the jurors. They said that the FELA was "the only method" by which compensation was provided, *Weinell, supra,* 411 F.2d at 512, and "[h]e has no compensation rights," *Kodack, supra,* 342 F.2d at 247.

At the conclusion of Haischer's evidence, CSXT argued that it ought to be able to offer evidence of his Railroad Retirement Board annuity because in the opening statement, and in his own testimony, the questions of financial strain and malingering were generated. The trial judge did not agree, invoked the collateral source rule, and precluded evidence from CSXT of the annuity benefits. When considered in context, we do not find that the opening statement by counsel, per se, put Haischer's financial status in issue, nor did counsel's statements rise to the level of those comments in *Weinell* and *Kodack* that were held to be objectionable.

### B. The Closing Argument

■ CSXT also points to counsel's closing argument, and specifically the sentence which we have highlighted below, wherein he stated:

> I told you in the very beginning that these few days in court were very important for Mr. Haischer. He cannot—if his circumstances change, he cannot come back into court a year from now and say, "Hey, I'm in a different position now. I have greater losses than I told you back then. So I need something else." He can't do that. *This is it for him today.*

Because CSXT did not object to the statement at the time it was made, and because the issue was not raised in any post-trial motion, we might consider the issue as appellate afterthought. It is clear from the record, however, that Haischer's counsel's similar comments in opening statement were of concern to CSXT. Thus, we will exercise our discretion under Md. Rule 8–131(a) to review the propriety of counsel's comments, even though Haischer has not raised an issue of non-preservation.

■ "Closing argument is intended to be a robust forum" in which counsel are given the opportunity to "slug it out." *White v. State,* 125 Md.App. 684, 713, 726 A.2d 858 (1999) (Moylan, J. concurring), *cert. denied,* 354 Md. 573, 731 A.2d 971 (1999). During closing arguments, counsel is expect-

ed to argue the evidence and the law, with the express purpose of bringing the jury to the point of view of his or her client, and to influence the jury to a verdict favorable to his or her client. Maryland has long held that "counsel has great latitude in the presentation of closing argument and any restriction of [counsel's] remarks is within the trial court's sound discretion." *Dorsey Bros., Inc. v. Anderson,* 264 Md. 446, 454, 287 A.2d 270 (1972) (citations omitted). The scope of their argument, however, must remain "within the record and the instructions of the court to the jury." *Crouse. v. Hagedorn,* 253 Md. 679, 686, 253 A.2d 834 (1969). "Counsel can never be permitted to argue to the jury against the instructions of the court, nor to indulge in any line of argument or comment that would tend to induce them to disregard the instructions given. . . ." *B & O R.R. Co. v. Boyd,* 67 Md. 32, 43, 10 A. 315 (1887).

As with the opening statement, we review the complained-of closing argument in context, rather than by parsing out selective words and phrases. As we read the full content of the argument, we conclude that the argument did not, per se, imply that the damages potentially awarded by the jury were to be taken as Haischer's only means of future income or financial resource. We do not read the closing argument as being against the evidence, or contrary to the instructions of the court, nor do we find it to have been sufficiently inflammatory to have warranted intervention by the trial judge, or correction by this Court.

## C. The Collateral Source Rule

■■■ CSXT next takes the position that the evidence produced in Haischer's case, both in direct and cross examination, was sufficient to put his financial position, and a question of malingering, into evidence, hence creating an exception to the collateral source rule. As we have noted, the collateral source rule excludes evidence of payment of damages or benefits to a plaintiff by any source other than a defendant. *American Paving & Contracting Co., supra,* 127 Md. at 485, 96 A. 623. Thus, CSXT asserts that the trial court erred in not permit-

ting it to examine Haischer with respect to his Railroad Retirement Board annuity.

As we see it, there are two separate areas of inquiry when an exception to the collateral source rule is suggested. The cases recognize, specifically and directly, malingering as one area of inquiry. There is, however, a second, and somewhat more subtle, area of question—that, is where the plaintiff himself puts his strained or diminished financial condition into play. We shall address both.

### 1. Financial Status

 CSXT argues that testimony elicited by Haischer's counsel put Haischer's financial status at issue, and suggested that Haischer was suffering financial stresses he would not have faced had the incident of March 1, 2000, not occurred, including the ability to: afford health insurance benefits; pay college tuition for his son; save for retirement; and properly maintain his home.

Haischer testified, on direct, that he would be unable to earn a wage comparable to that earned as a railroad engineer. He testified on direct that the cost to him to maintain health care coverage comparable to that provided by CSXT would be about $6,000 per year. Haischer testified that he had planned to work at his railroad job until he was 65, to be able to afford the cost of college for his son, and to save for his retirement. Haischer added that he is unable to maintain his home without employing the services of a house cleaner and other tradesmen to provide routine maintenance and improvements.

Haischer's counsel called Herman Bates as a vocational rehabilitation expert witness, who testified that Haischer talked to him "about the possibility of selling his home because he couldn't take care of the maintenance." Haischer also called Dr. Raymond S. Strangways, an economist, who testified about Haischer's projected decrease in future earnings, loss of fringe benefits, and the possibility of Haischer's obtaining alternate employment with equivalent benefits.

CSXT posits that the collective effect of evidence produced by Haischer relating to his financial sufferings opened the door for the introduction of evidence regarding the annuity payments Haischer is receiving. We agree.

Haischer relies upon *Eichel v. New York Central R.R. Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) and *Stillman v. Norfolk & W. Ry. Co.,* 811 F.2d 834 (4th Cir.1987). In *Eichel,* the Supreme Court set forth the rule that evidence of a plaintiff's receipt of collateral source benefits is inadmissible in a FELA action.

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act of 1937 ... were considered as evidence of malingering by an employee asserting a claim under the [FELA].

*Eichel, supra,* 375 U.S. at 255, 84 S.Ct. 316 (footnote omitted).

In *Stillman,* the plaintiff alleged that the lower court had erred by not allowing his counsel to inform the jury that "recovery under the FELA was Stillman's only possible remedy and that Stillman would receive no workers' compensation benefits." *Stillman, supra,* 811 F.2d at 838. Stillman asserted that because the jury may have assumed that he had already received workers' compensation benefits, it may have been reluctant to award additional damages under the FELA. *Id.* In rejecting Stillman's argument, the Fourth Circuit held:

> We find this argument unpersuasive. Stillman's ineligibility for workers' compensation benefits was completely irrelevant to the issues presented in this case, and allowing the jury to consider such information could have prejudiced the Railroad. Moreover, we note that defendants in FELA cases are not permitted to inform the jury that a plaintiff has received benefits from a collateral source. We perceive

no reason for a different rule when the plaintiff in a FELA case seeks to inform the jury of the absence of benefits from a collateral source.

*Id.* (internal citations omitted).

We find that *Eichel* and *Stillman* are distinguishable from the case *sub judice,* because in neither of those cases did the employer's attempt to offer evidence of Railroad Retirement benefits follow from the plaintiff's evidence of inferior or damaged financial security. In *Eichel,* the employer's attempt to introduce evidence of Railroad Retirement benefits was purely for the purpose of impeaching the plaintiff, not in response to any evidence given by plaintiff that would have put his economic status into question. *Stillman,* in contrast, presented the opposite situation—the plaintiff complained of not being permitted to introduce evidence that his only remedy was recovery under the FELA, lest the jury assume that he would receive, in addition, some form or workers' compensation benefits. Again, plaintiff did not put his financial status into question.

In *Gladden v. P. Henderson & Co.,* 385 F.2d 480 (3d Cir.1967), *cert. denied,* 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968), the Pennsylvania collateral source rule, similar to the Maryland rule, was considered. There, the plaintiff offered that, despite his disability, he returned to work because he had fallen behind in his financial obligations. The trial court permitted the defendant, on cross examination, to inquire of the plaintiff about benefits being received by him. In affirming, the Third Circuit Court of Appeals stated that

[p]laintiff ... brought into the case an additional, affirmative element [of financial hardship].... Defendant was not required to leave this testimony unchallenged.... To have forbidden such cross-examination would have conferred on plaintiff the unparalleled right to give testimony on direct examination with immunity from inquiry on cross-examination.

\* \* \*

[T]he collateral benefit rule cannot be made a springboard from which a plaintiff may go forward with affirmative evidence ... of financial need and then seek immunity from cross-examination regarding it. The boundary of silence was crossed when plaintiff affirmatively presented on direct examination [evidence of financial hardship].

*Gladden, supra,* 385 F.2d at 483–84.

We believe, to borrow the language of *Gladden,* that the boundary of silence was crossed by the evidence of Haischer's reduced financial condition and that CSXT ought to have been permitted to inquire into the Railroad Retirement annuity.

## 2. Malingering

 In addition, CSXT contends that there was sufficient evidence of malingering to open the door to the introduction of evidence of Haischer's Railroad Retirement annuity. It has been long held in Maryland that "evidence of collateral payments is admissible if there is evidence in the case of malingering ... but ... inadmissible in the absence of [such] evidence...." *Kelch, supra,* 42 Md.App. at 296, 400 A.2d 440 (internal citations omitted).

Haischer testified that "I think I could" work in some capacity, but that he had not worked since the date of the accident, had made no effort to find a job until just prior to the trial, and even then made only "casual inquiries"; nor had he made application for employment. He conceded that he has not been medically determined to be totally disabled. Further, he admitted that he had failed to avail himself of vocational rehabilitation services made available to him by CSXT. While there is nothing in the record to suggest that Haischer is exaggerating the extent of his injury, there is, in our view, evidence of "at least, a suggestion" of his malingering. *Id.* at 297, 400 A.2d 440. We further conclude that the evidence was sufficient to enable counsel for CSXT to introduce to the jury evidence of Haischer's receipt of collateral payments in the form of the Railroad Retirement annuity.

For the reasons that we have stated, we shall affirm the circuit court judgment as to CSXT's liability for Haischer's injuries, but shall vacate the money judgment and remand for a new trial, limited to the issue of damages as a result of injuries sustained by him on March 1, 2000.

**CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED IN PART AND REVERSED IN PART.**

**CASE IS REMANDED FOR A NEW TRIAL ON DAMAGES.**

**COSTS TO BE ASSESSED EQUALLY AGAINST THE PARTIES.**