936 A.2d 388

**Robert L. HANEY**

v.

**Jose D. GREGORY.**

**No. 2134 Sept. Term 2006.**

Court of Special Appeals of Maryland.

Nov. 30, 2007.

Louis P. Tanko of Annapolis, for appellant.

Kyle Blakeley of Towson, for appellee.

Argued before HOLLANDER, SALMON, and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

RODOWSKY, J.

In this motor vehicle tort action, rising out of an accident in which the appellee's vehicle rear-ended the vehicle of the

appellant, plaintiff below, judgment was entered in favor of the appellee on a jury verdict. The appellant contends that the trial court erred in granting an emergency instruction. The appellee asserts lack of preservation of that issue and that the emergency instruction was generated by the evidence.[1] For the reasons hereinafter stated, we shall reverse.

The accident occurred on the northbound side of the Jones Falls Expressway, Interstate 83, on February 23, 2004, at about 8:50 a.m. There is no evidence that the weather conditions were other than clear and dry. The site of the accident was in the area north of where Howard Street overpasses the expressway. In that area, the roadway rises up a hill or knoll.

On the morning in question, the appellant, Robert L. Haney (Plaintiff or Haney), was proceeding northbound in the fast lane. He testified that, when he was "coming over a hill," he saw a police car stopped behind a minivan that had apparently stalled. Both the minivan and the police car were in the fast lane. He looked to his right in an attempt to merge, but there was no room, so he "started to slow down, and started coming to a stop." As he came to a stop, the rear of his vehicle was struck by one operated by the appellee, Jose D. Gregory (Defendant or Gregory). On cross-examination, Plaintiff denied that he stopped suddenly. There was conflicting evidence whether the light on top of the police car was flashing.

The only other eyewitness to the accident was Defendant, who was called to testify in Plaintiff's case. Gregory acknowledged giving the following description of the accident in his answers to interrogatories:

---

1. The trial court read, almost verbatim, to the jury Maryland Pattern Jury Instruction–Civil 18:3 (2006):

 "When the driver of a motor vehicle is faced with a sudden and real emergency, which was not created by the driver's own conduct, the driver must exercise reasonable care for his own safety and for the safety of others. The reasonableness of the driver's actions must be measured by the standard of the acts of other drivers of ordinary skill and judgment faced with the same situation. The driver is not to be held to the same coolness or accuracy of judgment which is required of a person who has ample opportunity to fully exercise that personable [sic] judgment."

" 'As we crossed under the Howard Street Bridge, the highway inclines upwards, so that the road over the crest is not visible. As I came up over the hill, a car to my front came into my view, and was almost at a standstill, with no brake lights. Thereafter the driver of the car in front of mine hit the brakes, at which time I applied my brakes, but was unable to prevent my car from coming into contact with the rear of the Plaintiff's vehicle.' "

Under further examination by Plaintiff, Gregory explained that the events were sequential. He said:

"When I came over the hill, the [brake] lights [of Plaintiff's vehicle] weren't on, and it was daytime so I presumed the car was moving, and right when I came over the hill and—it was almost a matter of two seconds, two or three split seconds—the brake lights [on the Haney vehicle] weren't on, and then they were on, and by the time I realized, it was too late."

When examined by his counsel, Gregory testified that he was traveling "about 40, 45 miles an hour" and that he believed the speed limit was either 45 or 50 miles per hour. There was no other evidence of the speed limit. Again describing the accident on examination by his counsel, Gregory said there was "plenty of space" between his car and that of Haney, but he "lost" the Haney car "over the hill once it went up over." He testified that, when he "came up over the hill, [he] saw the car there and [he] thought it was still moving because [he] didn't see brake lights, and it was daytime. And the lights, the brake lights went on like, almost right before I hit him, and I rear-ended his car, and—this couple of seconds is kind of a blur" because the car spun around a couple of times following the impact.

When asked by his counsel how fast the Haney car was moving, Gregory replied that "[i]t didn't seem like it was moving."

"Q Okay. So you are saying it was moving slow?

"A Uh—huh.

"Q Is that a yes?

"A Yes, I don't recall how slow.

"Q Okay. And when was the point when you realized that that car wasn't moving—or let me scratch that. When was the point that you realized that you had to hit your brakes?

"A When I saw his brake lights and realized he wasn't moving, it was kind of within like, two seconds' time, when we go over the hill."

There was no evidence of the grade of the hill for northbound traffic approaching the brow of the hill. There was no evidence as to whether there is a downside slope for northbound traffic after reaching the brow of the hill, or whether the road levels at that unspecified higher elevation. There was no evidence of the distance from the brow of the hill to the place at which the stalled minivan and the police car were standing. There was no evidence of the sight distance required for Interstate Highways at the time of final design approval for the subject segment of the Jones Falls Expressway. Haney testified that he first saw the police car when he was approximately 150 yards away. Gregory acknowledged that he had not noticed the police car or the minivan at any time before the actual impact.

■ At the conclusion of the evidence, the court excluded the jury from the courtroom. Defendant renewed his motion for judgment, which was denied. Plaintiff did not make any motion for judgment.[2]

The court then considered, on the record, the parties' requested instructions. They had been submitted to the court at some earlier stage of the proceedings. Plaintiff acknowledged that he had no additional instructions, but, in response to a question by the court, Plaintiff stated that he objected to certain instructions requested by Defendant. After obtaining a ruling that the court would not grant Defendant's request

---

2. In this Court, Plaintiff argues that there was insufficient evidence, as a matter of law, to support a verdict for Defendant. That issue was waived by Plaintiff's failure to move for judgment in his favor.

for an unavoidable accident instruction, Plaintiff said that his other objection was to

"the one entitled Acts in Emergencies; that is recorded in Maryland Pattern 1823[sic]. The primary reason for objecting, it says, 'When the driver of a motor vehicle is faced with a sudden and real emergency, which was not created by the driver's own conduct—' I don't think there has been any evidence of an emergency, just because we have a stopped vehicle ahead. The emergency was created by the driver's own conduct, in fact; in other words, Mr. Gregory was driving too fast, and not keeping enough space. That is what causes there to be an emergency, that he couldn't stop in time. There was no emergency. It is just a normal event of everyday driving a vehicle that may be stopped in the roadway, for whatever reason, whether it is because there is traffic, construction. There is no evidence of emergency.

"This issue of emergency talks about things such as where an unforeseen leak in the road coming from an apartment building that is spilling water into the road which freezes, and then—that is something you are not expecting. You totally expect traffic to stop. It is a regular—not just a daily occurrence, many times a day occurrence where traffic will stop. It is just not rising to the level of an emergency. The only thing that would make it an emergency was the Defendant Gregory's conduct in being too close; he created his own emergency. So it is a totally inappropriate instruction.

"And that is true whether or not there were lights, emergency lights on the police officer's car or not, because there is conflicting testimony on that issue."

The Defendant argued "that the emergency is a stalled car in the fast lane of the Interstate on the downslope."[3] In response, the court stated: "I agree with that. I will give this instruction."

---

3. Presumably counsel meant beyond the brow of the hill. There is no evidence of a downslope.

We distill from the questions presented and arguments in the briefs of the parties the two dispositive issues set forth below:

1. Did the Plaintiff fail properly to object to the emergency instruction so that Plaintiff's issue has not been preserved for appellate review?

2. If preserved, did the trial court err when it granted Defendant's request for the emergency jury instruction?

## I

■ Maryland Rule 2–520(e) provides, and since July 1, 1984, has provided:

"(e) **Objections.** No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury."

In the instant matter, Plaintiff did not object to the emergency instruction "after" the court had instructed the jury. The consequence, Defendant contends, is that the inclusion of the instruction in the court's charge to the jury cannot be claimed on appeal to be error. Defendant's submission relies on the text of the rule, without referring us to any authority. Plaintiff has not favored us with a reply brief directed to the preservation issue.

Basically, Defendant's position is that an objection to an instruction that is made *before* the conclusion of the charge to the jury is *per se* ineffective for preservation purposes. The notion is that the rule limits effective objections to a window of time, opening with the conclusion of the charge to the jury and closing with the expiration of promptness thereafter. As we explain below, that reading is not required by the purpose of the rule, is inconsistent with the concept of substantial compliance that was recognized under predecessor rules, is not required by the "legislative" history of Rule 2–520(e), and is

inconsistent with the construction by the Court of Appeals of identical language in Rule 4–325(e), which was adopted contemporaneously with Rule 2–520(e), as part of the Rules Reorganization Project, effective July 1, 1984.

The purpose of Rule 2 –520(e) was restated by the Court of Appeals ·in *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005), where the Court said:

> "Maryland Rule 2–520(e) requires, as a condition to seeking appellate review of a jury instruction, that the party object promptly after the instruction is given and 'stat[e] distinctly the matter to which the party objects and the grounds of the objection.' The purpose of the rule, as we have made patently clear on a number of occasions, is 'to enable the trial court to correct any inadvertent error or omission in the oral [or written] charge, as well as to limit the review on appeal to those errors which are brought to the trial court's attention.' *Fisher v. [Baltimore] Transit Co.*, 184 Md. 399, 402, 41 A.2d 297, 298 (1945). In that manner, 'the trial judge is afforded "an opportunity to amend or supplement his charge if he deems an amendment necessary.'" *Sergeant Co. v. Pickett*, 283 Md. 284, 288, 388 A.2d 543, 546 (1978) (quoting in part from *State v. Wooleyhan Transport Co.*, 192 Md. 686, 689–90, 65 A.2d 321, 322 (1949)). Although we have often said that objections must be precise, the purpose of precision is 'that the trial court has no opportunity to correct or amplify the instructions for the benefit of the jury if the judge is not informed of the exact nature and grounds of the objection.' *Fearnow v. C & P Telephone*, 342 Md. 363, 378, 676 A.2d 65, 72 (1996)."

*Id.* at 39–40, 867 A.2d at 299.

In the instant matter, there was nothing inadvertent about the trial court's inclusion of the emergency instruction. Plaintiff could not have been more clear in stating his reasons for excepting to the request, and the court could not have been more clear in overruling the objection. Nor is this a case in which the trial court departed from the request to which Plaintiff's objection was directed. Defendant sought the Pat-

tern Jury Instruction, and the court gave the Pattern Jury Instruction. The issue in the circuit court was whether that instruction was generated by the evidence. There was nothing for the circuit court to correct based upon a post-charge reiteration of the exception.

Prior to the 1984 revision of the Maryland Rules, the only time limitation on taking exceptions to instructions was the submittal of the case to the jury. The General Rules of Practice and Procedure, adopted in 1941, provided in Part Three—Law Rules, § III, Rule 6, that objections to instructions could be made "[b]efore the jury retires to consider its verdict." Maryland Code (1939, 1947 Cum.Supp.) at 2051.[4]

*State, use of Bowman v. Wooleyhan Transport Co.,* 192 Md. 686, 65 A.2d 321 (1949), was decided under old Rule 6. The case was tried at a time when the insufficiency of the plaintiff's evidence to support a verdict was raised by a defendant's request for an instruction, or prayer, that the evidence was legally insufficient. If granted, the jury would be instructed to retire and return with a verdict for the defendant; literally, a directed verdict. In *Wooleyhan,* the defendant's "B prayer" sought a directed verdict, which the court granted. The official record did not reflect an objection by the plaintiff to the "B prayer" until after the jury had returned the directed verdict. On appeal, the defendant contended that this exception did not preserve the plaintiff's issue. The trial judge, however, had supplemented the record by a certificate stating that, in a chamber's conference before the charge to the jury, the plaintiff had objected to the "B prayer" on the ground that the evidence was legally sufficient. Against this background, the Court of Appeals said:

---

**4.** Old Rule 6(c) read:

"(c) *Objections.* Before the jury retires to consider its verdict, any party may object to any portion of any instruction given or to any omission therefrom or to the failure to give any instruction, stating distinctly the portion or omission or failure to instruct to which he objects and the specific grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

"The purpose of requiring the objection to any part of the charge to be presented to the trial judge before the jury retires is to give the trial judge an opportunity to amend or supplement his charge if he deems an amendment necessary. In the case before us the trial judge certified that the particular objection was made to him before he granted the prayer and delivered the charge to the jury, which he overruled. He specifically had the benefit of that objection before the jury retired. The only thing out of order in this case was the failure to have the stenographer in chambers to take down the objection. This was later formally done at the suggestion and with the approval of the trial judge. Rule 6, Sub-section (c) and (d), *supra*, did not contemplate the dismissal of an appeal under the circumstances in this case. The trial judge passed on the question, after objection, before the jury retired and the question is before us here."

*Id.* at 689–90, 65 A.2d at 322–23 (citation omitted).

The requirement that an exception to an instruction be taken "[b]efore the jury retires to consider its verdict" continued to be the only time limitation under former Rule 554 d, effective January 1, 1957. *See* Order of the Court of Appeals of July 18, 1956, adopting the Twelfth Report of the Standing Committee on Rules of Practice and Procedure. Former Rule 554 d also required the trial court to give either party an opportunity to object "in open court," out of the presence of the jury, upon an application made either before or after the conclusion of the charge to the jury.[5] A cross-reference

---

**5.** Former Rule 554 d, as adopted, read in full:

"Before the jury retires to consider its verdict, any party may object to any portion of any instruction given or to any omission therefrom or to the failure to give any instruction, stating distinctly the portion or omission or failure to instruct to which he objects and the specific grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. Either party shall have the right to express such objection in open court out of the presence of the jury, upon application, either orally or in writing, made before or after the conclusion of the instruction."

That rule, as amended effective September 15, 1961, read:

following former Rule 554 d directed the reader to a then "similar criminal rule," Rule 756 f. Former Rule 554 was in effect until the adoption of current Rule 2–520(e) in 1984. During the era of former Rule 554, the Court of Appeals decided a number o f cases that bear on the issue before us.

The appellant in *Merritt v. Darden*, 227 Md. 589, 176 A.2d 205 (1962), contended that the trial court had erred in instructing on imputed negligence. At the conclusion of the charge to the jury, the appellant stated "that his objections would be the same as he had made in chambers immediately before the instruction was given in open court." *Id.* at 597, 176 A.2d at 209. The Court of Appeals found preservation on the following rationale:

"But inasmuch as it appears that the trial judge was fully aware of the principles of law advocated by counsel for the [appellant] before the instructions were given, we think that the objection made was substantial compliance with the requirements of the rule, and that what was done was sufficient to preserve the right of the [appellant] to a review by this Court[.]"

*Id.* at 597–98, 176 A.2d at 209–10.

*Bennett v. State*, 230 Md. 562, 188 A.2d 142 (1963), was an appeal by an abused spouse who had been convicted of murdering her husband. The trial court had rejected the appellant's requested instruction dealing with her right to arm herself in anticipation of an assault. Although no exception was taken after the charge to the jury, the Court of Appeals held that the issue was preserved based on what had transpired prior to the charge. The Court stated:

"If a party has an objection to any portion of any instruction given, or to any omission therefrom, or to the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection. Opportunity shall be given to make the objection in open court out of the hearing of the jury upon application either orally or in writing, made before or after the conclusion of the charge."

"In the instant case, where the requests for instructions were submitted to the court in writing and written instructions to the jury were prepared by the court and were discussed in chambers with counsel for both parties before the charge was read to the jury in open court, it is clear that the trial court was fully aware of the particular instruction the defendant desired the court to give, for, in rejecting the second request, the court noted in writing thereon that it was 'sufficiently covered in [the] court's instructions.' Moreover, the record discloses that the defendant not only objected then and there to the denial of the second requested instruction but also excepted to the refusal of the court to read it to the jury. And while no further exceptions were made to the prepared charge after it had been read to the jury, there was in this case no reason to repeat in the court room what had already been said and recorded by the reporter in chambers."

*Id.* at 568–69, 188 A.2d at 145.

The Court of Appeals characterized as "catching at straws" the argument of the appellee in *Brown v. Bradshaw,* 245 Md. 524, 535, 226 A.2d 565, 571 (1967), that a claim of error in instructing the jury had not been preserved because the exception was made before the instructions were read to the jury. The Court held that "it will readily be perceived that where the trial judge confines his charge to the reading of the prayers and instructions offered by counsel it matters little whether the objection is registered before or after the reading." *Id.* at 537, 226 A.2d at 572.

Counsel for the appellant in *Sergeant Co. v. Pickett,* 283 Md. 284, 388 A.2d 543 (1978), objected, after the charge had been given, to the failure to give certain requested instructions, but did so as to certain of them by referring only to the numbers which the appellant had placed on its requests. This was held insufficient under the rule in *Belt's Wharf Warehouses, Inc. v. International Prods. Corp.,* 213 Md. 585, 591–92, 132 A.2d 588, 591 (1957). With respect to one of the exceptions, however, counsel stated, " 'And ten, unavoidable [sic] consequences.' " 283 Md. at 287, 388 A.2d at 545 (emphasis omitted). This

reference was held to be sufficient, "when coupled with a mere cursory reading of the proffered instruction." *Id.* at 289, 388 A.2d at 546. The Court of Appeals summed up as follows:

"Thus, in the final analysis, we have allowed some 'play in the joints' where Rule 554 is invoked to preclude appellate review, at least to the extent of accepting substantial compliance with those requirements. Here, further exposition by appellants' counsel of the 'ground' for the principle of law reflected by the instruction would have been both fruitless and unnecessary insofar as the rule was concerned. Once the trial court had signified that it comprehended the precise point being asserted, but nevertheless rejected it out-of-hand, the requirements of the rule had been met. At a minimum, this certainly represented substantial compliance with Rule 554 d and e, and, we hold, was therefore sufficient to preserve the issue for appellate review."

*Id.* at 289–90, 388 A.2d at 547 (footnote omitted).

Current Rule 2–520(e) is a product of the Rules Reorganization Project. When originally presented to the full Rules Committee at its meeting on April 21, 1981, by the subcommittee chair, Judge John McAuliffe, the proposed rule required that a party "shall make the objection on the record before the jury retires to consider its verdict," thereby continuing the then current limitation. The proposal also contained a provision, Reorganization Rule 2–523(d), under which "[t]he court may give its instructions at any time after the close of the evidence." The latter proposal prompted discussion, inasmuch as it would permit the court to instruct after counsel's closing arguments. A motion "that the rule be redrafted to require that 'final' instructions be given before closing arguments" was adopted.

The Committee then considered when objections to instructions should be made. It was

"of the opinion that if instructions are to be given before closing arguments, then objections to instructions should also be made at that time if the party wishes to preserve the point for appeal. An objection made at a later time might

prompt the court to correct an error contained in the instructions, but if an objection made at that time is overruled, the point is not appealable."

At its meeting on May 22–23, 1981, a revised rule, Reorganization Rule 2–523(e), read in relevant part as follows:

"No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the instructions are given or refused...."

A member of the Rules Committee staff

"questioned whether the 'or refused' language [in (e)] is intended to require that objections be made at the time when the court indicates which instructions it will or will not give. Judge McAuliffe stated that the subcommittee's intent was to require that objections be made promptly after the court gives its instructions. The Chairman directed the style subcommittee to ensure that the language of the rule reflects the subcommittee's intent."

In the version adopted, present Rule 2–520(e), the clause, "after the instructions are given or refused," was changed to "after the court instructs the jury."

These minutes reflect that the focus of the Committee was on how late in the proceedings exceptions could be taken, but they do not indicate an intent *flatly* to preclude preservation if explicit objection is made, on the record, at a discussion with the court of instructions, held in advance of the charge. The minutes also reflect an intent that a party would not be foreclosed on appeal by failing to except at the time of an instruction discussion with the court, so long as the objection was made promptly after the charge. The minutes do not reflect an intent to abrogate by rulemaking the law that had been developed by the Court of Appeals theretofore.

After the 1984 rules were in effect, the Court of Appeals decided *Gore v. State,* 309 Md. 203, 522 A.2d 1338 (1987). At a bench conference held in the course of the defendant's closing argument, the court advised that it would give a supplemental instruction, to which the defendant objected. After the instruction had been given at the end of closing arguments, the

defendant did not renew the objection. Relying on *Bennett v. State*, 230 Md. 562, 188 A.2d 142, the Court of Appeals held that the issue had been preserved. That Court enumerated conditions for applying the rule of substantial compliance, saying:

"[T]here must be an objection to the instruction; the objection must appear on the record; the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record and the circumstances must be such that a renewal of the objection after the court instructs the jury would be futile or useless.

"We are satisfied that Gore's objection at the bench conference was sufficient to establish substantial compliance with Rule 4–325(e) and therefore will review his assignment of error."

309 Md. at 209, 522 A.2d at 1340.

The Court of Appeals returned to the issue before us in *Sims v. State*, 319 Md. 540, 573 A.2d 1317 (1990). In that case, defense counsel unsuccessfully had requested a manslaughter instruction at a bench conference prior to the charge to the jury, but at the conclusion of the charge he had not included in his objections the denial of the manslaughter instruction. In an obvious effort to restrict too liberal an application of the substantial compliance concept, the Court, speaking through Judge John McAuliffe, said:

"We have said that under certain well-defined circumstances, when the objection is clearly made before instructions are given, and restating the objection after the instructions would obviously be a futile or useless act, we will excuse the absence of literal compliance with the requirements of the Rule. *Gore v. State*, 309 Md. 203, 208–09, 522 A.2d 1338 [, 1340] (1987); *Bennett v. State*, 230 Md. 562, 188 A.2d 142 (1963). We make clear, however, that these occasions represent the rare exceptions, and that the requirements of the Rule should be followed closely. Many issues and possible instructions are discussed in the usual

conference that takes place between counsel and the trial judge before instructions are given. Often, after discussion, defense counsel will be persuaded that the instruction under consideration is not warranted, and will abandon the request. Unless the attorney preserves the point by proper objection after the charge, or has somehow made it crystal clear that there is an ongoing objection to the failure of the court to give the requested instruction, the objection may be lost. *See Johnson v. State*, 310 Md. 681, 685–89, 531 A.2d 675[, 677–79] (1987). In reading the transcript of these proceedings, for example, it is difficult, if not impossible, to determine whether defense counsel acquiesced in the judge's determination that the defendant could not 'walk both sides of the street' or, whether having considered the apparent inconsistency of the two positions, counsel decided to abandon the request for a manslaughter instruction as a matter of sound trial tactics or, whether he intended to persist in his request."

*Id.* at 549, 573 A.2d at 1321. The Court considered the issue because this Court had applied the "plain error" exception, and in doing so, this Court did not abuse its discretion. *Id.*

*Sims* was applied in *Corbin v. State*, 94 Md.App. 21, 614 A.2d 1329 (1992), where then Chief Judge Wilner, speaking for this Court, "perceive[d] no merit" in a contention that there had been a waiver of objection to an instruction, saying:

"Defense counsel argued at the close of all evidence that the requested instructions should be given. She excepted to the court's refusal to give the instructions at that time and, again, the next day just before the jury was instructed. Under the circumstances, we are satisfied that a third exception, after the jury was instructed, 'would obviously [have been] a futile or useless act.' [*Sims*, 319 Md. at 549, 573 A.2d at 1321]."

*Id.* at 27 n. 2, 614 A.2d at 1331 n. 2.

This Court has also said that "[b]ecause Rules 2–520(e) and 4–325(e) contain identical language, we see no reason why [the *Sims* ] rationale should not apply with equal force in the civil

context." *Black v. Leatherwood Motor Coach Corp.*, 92 Md. App. 27, 34 n. 4, 606 A.2d 295, 298 n. 4, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992). *See also,* with respect to Rule 2–520(e), *Butler–Tulio v. Scroggins,* 139 Md.App. 122, 153, 774 A.2d 1209, 1227 ("Because appellant did not object to the trial court's failure to give these instructions and because there is no evidence that such jury instructions were requested, appellant's claims have not been preserved for review."), *cert. denied,* 366 Md. 247, 783 A.2d 221 (2001); *Billman v. State of Md. Deposit Ins. Fund Corp.,* 88 Md.App. 79, 111, 593 A.2d 684, 699 ("[T]he issue has not been preserved because, neither in the pre-instruction conference, nor in exceptions taken after the jury had been charged, did appellants ask the court to distinguish in the burden of proof instruction between the various claims of the plaintiff."), *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991). *But see Poteet v. Sauter,* 136 Md.App. 383, 414–15, 766 A.2d 150, 166–67 (2001) (finding non-preservation where appellee did not question preservation, and the *Sims* rule was not argued by the appellant).

In the instant matter, there is no conceivable tactical reason why Plaintiff would decide, after having distinctly objected to the requested emergency instruction, to forego that objection. Nothing transpired after the conference on instructions that would lead Plaintiff to conclude that it was acceptable to the Plaintiff for the court to tell the jury, in effect, that if it believed Defendant's testimony, Defendant had faced a "sudden and real" emergency. We hold that the issue is preserved.

## II

 Whether Defendant was entitled to a sudden emergency instruction turns on whether that issue was generated by the evidence. *See Levine v. Rendler,* 272 Md. 1, 320 A.2d 258 (1974). The evidence most favorable to the Defendant on this issue is his testimony. Although Defendant's *argument* is that his visibility was obscured by the brow of the hill which he was ascending, his *testimony* is that, after the Plaintiff's vehicle came back into view, he saw that it was traveling

slowly, but Defendant did not reduce his speed until he saw the brake lights on the Plaintiff's vehicle, at which time he immediately applied his brakes but nevertheless rear-ended Plaintiff's vehicle. Plaintiff argues that, for a motorist to stop when traffic in front of that motorist stops, is an ordinary condition of driving and does not present an emergency. Our review of the Maryland appellate decisions leads us to conclude that the evidence most favorable to the Defendant did not describe a "sudden and real" emergency.

*Warnke v. Essex*, 217 Md. 183, 141 A.2d 728 (1958), has been cited frequently for the applicable rule.

"Generally, the operator of an automobile who suddenly finds himself in a position of peril is not required to exercise the same care as when he has ample time to reflect upon the course of action he should pursue. However, if the operator is not actually in a position of sudden peril, or, if the peril arises because of his own negligence, then the emergency rule is not applicable."

*Id.* at 186–87, 141 A.2d at 729 (citations omitted). Here, Defendant did not suddenly find himself in a position of peril; nor was there any evidence that he was required to chose between alternatives.

Cases in which an emergency instruction was held to have been generated by the evidence reflect the suddenness requirement. *See Stevens v. Chandler Motor Co.*, 222 Md. 399, 160 A.2d 772 (1960) (crossing center line); *Mitchell v. Montgomery County*, 88 Md.App. 542, 564, 596 A.2d 93, 103 (1991) (pedestrian steps without warning in front of moving bus); *Ristaino v. Flannery*, 76 Md.App. 662, 547 A.2d 1115 (1988) (vehicle operated within posted speed limit and otherwise in a safe manner inexplicably skids on wet road, crossing center line), *vacated on other grounds*, 317 Md. 452, 564 A.2d 790 (1989); *Miller v. Reilly*, 21 Md.App. 465, 319 A.2d 553 (sudden and unanticipated brake failure), *cert. denied*, 272 Md. 746 (1974); *Mudrick v. Weakley*, 17 Md.App. 175, 300 A.2d 436 (dog darts in front of lead car, causing rear-end collision), *cert. denied*, 269 Md. 764 (1973); *Braswell v. Burrus*, 13 Md.App.

513, 284 A.2d 41 (1971) (pedestrian runs in front of defendant's car); *Armstrong v. Johnson Motor Lines, Inc.,* 12 Md.App. 492, 280 A.2d 24 (sudden lane change in front of defendant), *cert. denied,* 263 Md. 709 (1971). *See also Moats v. Ashburn,* 60 Md.App. 487, 483 A.2d 791 (1984) (sliding on snow) (dicta).

This Court approved an emergency instruction based on a vehicle's standing on the highway in *Montgomery Cablevision Ltd. P'ship v. Beynon,* 116 Md.App. 363, 696 A.2d 491 (1997), *rev'd on other grounds,* 351 Md. 460, 718 A.2d 1161 (1998). That appellant had caused the Capitol Beltway, Interstate 495, to be closed, beginning at 2:00 a.m., in order to reposition replacement cable across both the inner and outer loops of that highway. This produced backups of approximately one mile in each direction. The plaintiffs' decedent struck the rear-end of a tractor trailer that was stopped by the backup. This case is distinguishable from the instant matter because it occurred at night, and the tractor trailer was "poorly illuminated." *Id.* at 397, 696 A.2d 491, 696 A.2d at 507.

Also illustrative of the suddenness element in proper applications of the emergency doctrine are those cases in which the appellate court concludes that the party asserting an emergency is not entitled to judgment as a matter of law, but that a factual issue is presented as to whether there is an emergency. Examples are: when a vehicle enters the roadway from an alley, *see Ryan v. Thurston,* 276 Md. 390, 347 A.2d 834 (1975); when a child or a dog suddenly enters the roadway in front of the motorist, *see Robertson v. State, u/o Meyer,* 216 Md. 175, 139 A.2d 715 (1958), and *Harner v. Russell,* 185 Md. 519, 45 A.2d 273 (1946); when a vehicle crosses the center line or drives on the wrong side of the road, *see Teal v. Schissler,* 238 Md. 620, 209 A.2d 244 (1965); *Lehmann v. Johnson,* 218 Md. 343, 146 A.2d 886 (1958); *Mason v. Triplett,* 217 Md. 433, 141 A.2d 708 (1958); *Warnke v. Essex, supra,* 217 Md. 183, 141 A.2d 728; *Consolidated Gas, Elec. Light & Power Co. v. O'Neill,* 175 Md. 47, 200 A. 359 (1938); *Newman v. Stocker,* 161 Md. 552, 157 A. 761 (1932), and *Fouche v. Masters,* 47 Md.App. 11, 420 A.2d 1279 (1980); when a motorist makes an unsignaled left turn across oncoming traffic, *see Baker v.*

*Shettle*, 194 Md. 666, 72 A.2d 30 (1950); and when a motorist is attempting to clear a path for a police vehicle sounding its siren and flashing its blinker lights, *see Effler v. Webber*, 18 Md.App. 162, 305 A.2d 485 (1973).

Two decisions holding that a motorist was not entitled to a sudden emergency instruction are particularly relevant here. In *Crouse v. Hagedorn*, 253 Md. 679, 253 A.2d 834 (1969), the operator of a trailing vehicle sued the operator of a leading vehicle. Both were traveling southbound at about thirty miles per hour in the late afternoon on a rural highway. After making a movement to its right, as if to make a right turn into an intersecting road, the lead vehicle continued to proceed southbound, slowly, for 200 feet and stopped, opposite an entrance to a restaurant-gasoline station. The trailing vehicle, a tractor trailer, was carrying 46,000 pounds of cargo. While the truck was passing the stopped vehicle on its left, the defendant's vehicle hit the truck.

The jury found both parties to have been negligent. On appeal, the truck owner plaintiff contended that the trial court erred by refusing to grant an instruction which in relevant part read:

> " 'The court instructs the jury that if they shall find from the evidence that the defendant slowed his vehicle to almost a stop without warning to the plaintiff, who was in the following vehicle, the plaintiff, in attempting to avoid a collision, is not held to any higher degree of care than that which an ordinary prudent person would exercise when suddenly placed in a perilous situation[.]' "

*Id.* at 683, 253 A.2d at 836–37. The Court of Appeals affirmed. It held that the requested instruction was defective because, *inter alia*, "it states that these facts, if found to be such by the jury, constitute a 'perilous situation' and concludes, therefore, that these facts are sufficient to constitute an emergency." *Id.*, 253 A.2d at 837.

Judge Hollander, writing for this Court in *Rustin v. Smith*, 104 Md.App. 676, 657 A.2d 412 (1995), concluded, based on a review of the Maryland cases addressing sudden emergency,

that an instruction on the doctrine is appropriate only when there is evidence that the motorist invoking the rule "took any *action* in response to the emergency." *Id.* at 678, 657 A.2d at 413. In that case, the defendant, Rustin, was traveling at night on a city street during a rainstorm which caused water to sluice over the roadway. His speed was between twenty-five and thirty-five miles per hour. He lost control of his vehicle either because he hit a pothole or, due to the slickness of the road, he hydroplaned. His vehicle struck the plaintiff's oncoming vehicle.

This Court said:

"With respect to Rustin's conduct in response to his losing control of his vehicle, there is no evidence that he had any options, made any decisions, or took any specific action whatsoever to avoid the collision. Although he broadly claims that he tried to retain control, he did not specify what steps he took, or even what options were available. He did not even say he could not respond—that he failed to act—because of the emergency. Rather, the evidence indicates that, once Rustin lost control, the vehicle was wholly uncontrollable.

"At some point in every collision, there is always an emergency. That does not mean that an emergency instruction is always appropriate. An 'acts in emergency' instruction is appropriate only where '[t]he jury could have determined ... whether in the light of the *alternatives available to him,* and the time available to him to *recognize and evaluate* those alternatives, [Rustin] *made a choice that a reasonable, prudent person would make.'* Moats, 60 Md. App. at 494, 483 A.2d [at 795] (emphasis added). Even if there were an 'emergency,' Rustin took no 'act' and made no 'choice' for the jury to judge in the context of the emergency. Accordingly, we conclude that the circuit court correctly refused to instruct the jury as to 'acts in emergencies.' "

*Id.* at 681–82, 657 A.2d at 415.

Under the testimony in the case before us, there was no "sudden and real" emergency based on two vehicles standing

on the roadway in broad daylight, or based on Plaintiff's slowing to stop, or stopping, behind the standing vehicles. Even if there were a sudden stopping by the Plaintiff, there was no evidence that Defendant was required to make an immediate choice between alternatives. The only choice that Defendant was required to make was when to apply his brakes. Under the circumstances here, that is not a basis for a sudden emergency instruction.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE APPELLEE.**