66 A.3d 112

**Cherice WILLIS**

v.

**Derrick FORD.**

No. 256 Sept. Term 2012.

Court of Special Appeals of Maryland.

May 3, 2013.

Shireen Jayatilaka, Greenbelt, MD, for Appellant.

Kenneth E. McPherson, Riverdale, MD, for Appellee.

Panel: WRIGHT, BERGER, LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

BERGER, J.

This case arises out of an automobile accident involving two vehicles. One vehicle was owned and driven by appellant, Cherice Willis ("Ms.Willis"); the other vehicle was owned and driven by appellee, Derrick Ford ("Mr.Ford"). At the time of the accident, co-appellee Tylisha Ford ("Ms.Ford") was a rear seat passenger in Mr. Ford's vehicle.[1]

The Fords filed a complaint for negligence against Ms. Willis on September 9, 2010 in the Circuit Court for Prince George's County. After a two day trial, a jury returned a verdict in favor of the Fords, and awarded costs for medical bills and non-economic damages. Ms. Willis filed a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial. The circuit court denied the motions. This appeal followed.

Ms. Willis presents two questions for review, which we have rephrased as follows:

1. Whether the circuit court erred by denying Ms. Willis' Motion for Judgment Notwithstanding the Verdict and Motion for New Trial.

2. Whether the circuit court erred by failing to provide a jury instruction regarding "Acts in Emergencies."

For the reasons set forth below, we affirm the decision of the Circuit Court for Prince George's County.

## FACTUAL AND PROCEDURAL BACKGROUND

An automobile accident occurred on or about May 8, 2010 at approximately 1:30 a.m. The accident occurred on Pennsylvania Avenue, at or close to the intersection of Walters Lane, in Suitland, Maryland. Pennsylvania Avenue is a divided highway with two travel lanes on each side, as well as separate

---

1. Appellees are hereinafter collectively referred to as "the Fords."

lanes dedicated to right and left turning vehicles. The speed limit is 50 or 55 miles per hour. There are street lights along Pennsylvania Avenue, but it is not brightly lit. Pennsylvania Avenue is a busy highway at all times, both day and night.

On the night of the accident, Mr. Ford was driving a white Crown Victoria automobile with three passengers. One of the passengers, Ms. Ford, was seated in the right rear passenger seat. Mr. Ford drove with his exterior lights illuminated, and the car was operating properly. The Fords were traveling in the left travel lane on Pennsylvania Avenue when their vehicle stopped behind three other vehicles for a red traffic light at the intersection of Walters Lane. There were two traffic lanes on the right side of Mr. Ford's vehicle: a travel lane and a right turn lane. There was one traffic lane on the left side of Mr. Ford's vehicle, which was a left turn lane. Beyond the left turn lane there was a grass median. Other vehicles traveled down the same lane of traffic and stopped behind Mr. Ford's vehicle for the red traffic light. When the traffic light turned green, Mr. Ford's vehicle stalled.

Mr. Ford testified that he turned on the vehicle's hazard lights. Ms. Ford testified that she could hear the hazard lights clicking as she waited for Mr. Ford to restart the vehicle.[2] During that time, the traffic lights went through approximately three cycles. Numerous motorists drove around Mr. Ford's stalled vehicle during that time. The Fords (and the other passenger) remained inside the vehicle while Mr. Ford attempted to restart the vehicle. The Fords testified that they believed it was safer to stay in the vehicle than to step out into the roadway.

Ms. Willis was driving a dark colored vehicle down Pennsylvania Avenue at a rate of speed of approximately 50 miles per hour. Ms. Willis testified that she was traveling behind a vehicle in the left lane on Pennsylvania Avenue. She further testified that she observed the driver in front of her slam on

---

2. Ms. Willis testified that Mr. Ford's vehicle did not have its hazard lights illuminated.

the brakes and quickly swerve into the right lane. At that time, Ms. Willis saw the Fords' vehicle stopped in the same lane ahead of her. Ms. Willis testified that she had no choice but to collide with the Fords' vehicle. Ms. Willis' vehicle then hit Mr. Ford's vehicle from behind.[3]

Both Mr. Ford and Ms. Ford testified that Ms. Willis was operating her vehicle without headlights while she was traveling down Pennsylvania Avenue. Ms. Willis testified that her vehicle's headlights were turned on prior to the collision, and that the lights went out after the collision because "the air bags went out, and that causes the car to go dead."

An independent witness, Beverly Yarborough ("Ms.Yarborough"), testified through taped testimony.[4] She testified that at the time of the accident, she was stopped in her vehicle on Walters Lane at the intersection of Pennsylvania Avenue. Ms. Yarborough observed Mr. Ford's vehicle stopped in the left travel lane without any hazard lights or headlights. Ms. Yarborough testified that while she was stopped, she observed an SUV traveling in the left lane, which swerved into the right lane to avoid Mr. Ford's stopped vehicle. Immediately after the SUV swerved, Ms. Willis' vehicle collided into Mr. Ford's vehicle from behind. Ms. Yarborough testified that she did not believe Ms. Willis could see Mr. Ford's stopped vehicle because of the SUV traveling in front of her.

On or about September 9, 2010, the Fords sued Ms. Willis for negligence. The case proceeded to trial before a jury on January 23, 2012 and January 24, 2012. On January 24, 2012, the jury returned a verdict in favor of the Fords and against Ms. Willis. The jury awarded $4,800.76 for Mr. Ford's medi-

---

3. The Fords observe in their brief that after the accident, Ms. Willis left her vehicle in the roadway with no lights on. Other motorists drove around Ms. Willis' vehicle.

4. Ms. Willis explains that Ms. Yarborough was a resident of the District of Columbia and, therefore, beyond the subpoena powers of the Maryland courts. Ms. Willis' counsel filed a foreign subpoena in the District of Columbia, served Ms. Yarborough, and her taped testimony was played before the jury.

cal bills, as well as $4,200 for Mr. Ford's noneconomic damages. The jury further awarded $1,292.53 to Ms. Ford for medical bills, and $5,000 to Ms. Ford for non-economic damages.

Ms. Willis filed a Motion for Judgment Notwithstanding the Verdict ("JNOV") on February 3, 2012. She also filed a Motion for New Trial on February 6, 2012. The circuit court denied both of the motions by written orders dated March 8, 2012, and March 12, 2012, respectively. Ms. Willis filed this timely appeal.

## STANDARD OF REVIEW

"The standard of review of a court's denial of a motion for JNOV is . . . whether on the evidence presented a reasonable fact-finder could find the elements of the cause of action by a preponderance of the evidence." *Univ. of Md. Medical Sys. Corp. v. Gholston*, 203 Md.App. 321, 329, 37 A.3d 1074 (2012) (citing *Washington Metro. Area Transit Auth. v. Djan*, 187 Md.App. 487, 491–92, 979 A.2d 194 (2009)). "The standard of review of the denial of a motion for new trial is abuse of discretion." *Id.* (citing *Miller v. State*, 380 Md. 1, 92, 843 A.2d 803 (2004)).

## DISCUSSION

### A. Denial of Motions for JNOV and New Trial

 Ms. Willis argues that the trial court erred by denying her motions for judgment notwithstanding the verdict and for a new trial on the basis that the Fords should have been found contributorily negligent as a matter of law. The Fords contend that there was competent evidence to support the Fords' claims, and that there was more than one reasonable inference that a jury could make concerning the issue of contributory negligence. Accordingly, the Fords argue, Ms. Willis failed to show that there was only one factual and legal conclusion available from the evidence. For these reasons, the Fords posit that the circuit court did not err in denying Ms. Willis'

motions for judgment notwithstanding the verdict and for a new trial. We agree with the Fords.

 Pursuant to Md. Rule 2–532(a), a party may move for judgment notwithstanding the verdict if that party made a motion for judgment at the close of all of the evidence pursuant to Md. Rule 2–519.[5] A motion for judgment notwithstanding the verdict "tests the legal sufficiency of the evidence." *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 326, 389 A.2d 887 (1978). The court "must determine whether the record contains legally relevant and competent evidence, however slight, from which a jury rationally could have found in [the plaintiff's] favor." *Southern Management Corp. v. Taha,* 137 Md.App. 697, 714, 769 A.2d 962, *rev'd on other grounds,* 367 Md. 564, 790 A.2d 11 (2002).

 In considering a motion for judgment notwithstanding the verdict, the trial court must assume the truth of all credible evidence on the issue. *Impala Platinum Ltd.,* 283 Md. at 328, 389 A.2d 887. The trial judge must adopt all inferences fairly deducible from the evidence in the light most favorable to the party against whom the motion is made. *Scapa Dryer Fabrics, Inc. v. Saville,* 418 Md. 496, 503, 16 A.3d 159 (2011). In short, the trial court must determine whether "the facts and circumstances only permit one inference with regard to the issue presented." *Id.* On appeal, a challenge to the trial court's ruling on a motion for judgment notwithstanding the verdict is confined to whether the evidence rose above speculation, hypothesis, and conjecture in order to support the jury's verdict. *Id.*

 Ms. Willis carried the burden of proof at trial to demonstrate that the Fords were contributorily negligent. *See Moodie v. Santoni,* 292 Md. 582, 586, 441 A.2d 323 (1982). "Ordinarily, the issue of contributory negligence is a question of fact for the jury to resolve." *Faith v. Keefer,* 127 Md.App. 706, 746, 736 A.2d 422 (1999) (internal citations omitted).

---

5. The record reflects that Ms. Willis made a motion for judgment so as to preserve her right to move for judgment notwithstanding the verdict.

Here, Ms. Willis sought judgment as a matter of law. To obtain judgment as a matter of law, Ms. Willis was required to show that there was no evidence from which the jury could find that the Fords acted reasonably under the circumstances. *Lindenberg v. Needles*, 203 Md. 8, 14, 97 A.2d 901 (1953) ("contributory negligence cannot be found as a matter of law [ ] unless the evidence permits but one interpretation which shows some prominent and decisive act in regard to which there is no room for ordinary minds to differ").

■ Maryland Rule 2–533(a) provides that any "party may file a motion for a new trial within ten days after entry of judgment." A new trial may be granted where the verdict is against the evidence or the weight of the evidence. *Thodos v. Bland*, 75 Md.App. 700, 708, 542 A.2d 1307 (1988).

Here, Ms. Willis contends that the Fords were contributorily negligent because they remained inside the vehicle while Mr. Ford attempted to restart the vehicle, rather than getting out of the vehicle and moving to the median of the road. Ms. Willis cites *Martin v. Sweeney*, 207 Md. 543, 114 A.2d 825 (1955) in support of her position. In our view, however, *Martin* is distinguishable.

In *Martin*, 207 Md. at 552, 114 A.2d 825, the Court of Appeals held that a party was contributorily negligent as a matter of law. In that case, on a rainy evening, a couple was driving on a highway that was separated by a grass parkway. *Id.* The couple's car went off the road after attempting to stop behind vehicles that had slowed down due to road construction. *Id.* The couple's vehicle stopped on the grass median, but had spun around so that it was facing the way it had come. *Id.* After five minutes, the couple attempted to drive back onto the road, but was unable to do so because the grass was wet. *Id.* The driver let some air out of the tires to gain traction. *Id.* The driver then drove onto the roadway, into the fast lane, in the direction of oncoming traffic. *Id.* at 546, 114 A.2d 825. The driver's plan was to make a U-turn and then proceed in the direction he had been going before he skidded off the road. *Id.* However, when he got back on the highway, the

driver realized that traffic was coming towards him, so he stopped the car, took a flashlight, and attempted to signal vehicles to go around his parked vehicle. *Id.* The passenger remained in the vehicle. *Id.* An oncoming vehicle then collided with the couple's parked vehicle. *Id.*

Both the driver and passenger in *Martin* testified that they were aware that they were entering a place of danger by driving off the grass and into oncoming traffic. *Id.* at 546–47, 114 A.2d 825. The Court of Appeals observed that, "where one leaves a place of safety to venture into a place or posture of danger, and is harmed; in such cases, the venturesome one often has been held to be guilty of contributory negligence as a matter of law." *Id.* at 547, 114 A.2d 825. (citations omitted). "Conversely, where one who remains in a place of danger with time and the physical ability to leave, and is harmed, the courts have often held such failure to act to be contributory negligence as a matter of law." *Id.* (citations omitted). The Court of Appeals observed that the driver in *Martin* could have worked his way along the grass parkway until he was able to drive on to the side of the road going in the same direction as traffic. *Id.* at 546, 114 A.2d 825. Instead, the driver "chose and executed the most dangerous of the alternatives in driving onto the road ..." and the passenger merely "stood by" while this happened, which directly contributed to her injury. *Id.* at 547, 114 A.2d 825. Accordingly, the Court of Appeals affirmed the trial court's ruling that the couple was contributorily negligent as a matter of law. *Id.* at 552, 114 A.2d 825.

Ms. Willis contends that *Martin* is persuasive in light of two key facts. First, Ms. Ford testified that one of the reasons that she did not get out of the vehicle is because she was wearing high heeled shoes. Second, Ms. Ford testified that she observed Ms. Willis' vehicle approaching for approximately 60 seconds before the collision (although Ms. Ford also testified that she could not tell which lane Ms. Willis was driving in).

In our view, however, *Martin* is inapposite. The couple in *Martin* had reached a place of safety—the grass median—and then chose to drive into oncoming traffic—a place of danger. The passenger had ample time to remove herself from the vehicle or object to the driver, but she nevertheless did nothing. By contrast, here, Mr. Ford's vehicle stalled on the highway. The Fords, therefore, were in a place of danger. This distinction is critical. Because the Fords were *not* in a place of safety, they were faced with two potential courses of action, each of which carried an inherent risk. The parties could remain in the vehicle, try to restart it, and hope to continue on their way. Alternatively, the parties could have exited the vehicle, walked across one lane of traffic on the highway to the grass median, and left the vehicle on the roadway.

The question is whether it was so unreasonable for the Fords to conclude that it was safer to remain in their vehicle that no ordinary person would have reached the same conclusion. In our view, Ms. Willis failed to show that this could be the only factual and legal conclusion available from the evidence. Likewise, Ms. Willis failed to show that the jury's verdict was against the weight of the evidence. The Fords were driving a large, white vehicle. There was testimony—although it was contradicted—that the vehicle's hazard lights were turned on. There was also testimony indicating that other drivers had observed Mr. Ford's stalled vehicle and safely drove around it. At the time, the Fords did not know why their vehicle had stalled, and, therefore, believed they could continue on their way by trying to restart the vehicle.[6] Finally, in order to reach the grass median, the parties would have had to cross a dimly lit and busy traffic lane on a highway.

It was incumbent on the trial judge to submit the Fords' decision-making process to the judgment of the jurors, who could evaluate the Fords' course of action pursuant to the

---

6. The Fords later learned that their vehicle stopped because it ran out of gas.

reasonable person standard. The trial judge instructed the jury on contributory negligence. Accordingly, we hold that the trial court did not err in denying Ms. Willis' motion for judgment notwithstanding the verdict, because Ms. Willis failed to show that the only factual and legal conclusion available from the evidence was that the Fords were contributorily negligent as a matter of law. We further hold that the jury's verdict was not against the weight of the evidence, and, therefore, the trial court did not err in denying Ms. Willis' motion for a new trial.[7]

### B. Acts in Emergencies

█ Next, Ms. Willis argues that the trial court erred by failing to instruct the jury on "Acts in Emergencies," and on that basis abused its discretion in failing to grant a new trial. The Fords contend that this argument is not preserved for appellate review, and, even if it was, the evidence did not require such an instruction. We agree with the Fords that, even assuming this issue has been preserved, the trial court did not err.

The Fords dedicate a significant portion of their brief to the issue of preservation. Although some of the relevant parts of the transcript are noted on the record as "indiscernible," it appears that Ms. Willis' counsel withdrew any request for an "Acts in Emergencies" instruction. In particular, after ruling on requests by both Ms. Willis' counsel and the Fords' counsel, the judge gave the parties a final opportunity to request any jury instruction:

[THE COURT]: All right, anything else?

[MS. WILLIS]: No, Your Honor.

[THE FORDS]: No, Your Honor.

Subsequently, at the conclusion of the jury instructions, the judge invited counsel to the bench where they had the oppor-

---

7. In light of our holding, we do not need to reach the merits of the Fords' alternative argument that *Martin* is inapplicable because Ms. Willis was allegedly operating her vehicle unlawfully by driving without the headlights turned on.

tunity to challenge the substance of the jury instructions pursuant to Md. Rule 2–520(e). At that time, Ms. Willis' counsel mentioned "Acts in Emergencies," but, thereafter, she seemingly abandoned that exception:

[THE COURT]: (Indiscernible)

[MS. WILLIS]: You didn't read (indiscernible) and emergencies, 18:3.

[THE COURT]: (Indiscernible)

[MS. WILLIS]: No, I didn't. I requested it. Counsel [for the Fords] had a problem with it.

[THE FORDS]: (Indiscernible)

[MS. WILLIS]: No, no, that was defective, Your Honor. Defective vehicle was what I pulled.

[THE COURT]: What was the number?

[MS. WILLIS]: 18:3, acts in emergencies.

[THE COURT]: (Indiscernible)

[MS. WILLIS]: Correct. So the exceptions to that, Your Honor. 10:4, aggravation, that was read. 19:3, assumption of risk, was that read?

[THE COURT]: (Indiscernible)

[MS. WILLIS]: And then on 18:4, violation of statute.... And the second [issue pertaining to vehicle speed]. So those are [my] two exceptions. And then the only other exception in the verdict sheet is.... That's it, Your Honor.

According to the Fords, when Ms. Willis' counsel first mentioned the instruction for "Acts in Emergencies," the judge reminded Ms. Willis' counsel that she had withdrawn that request during an initial discussion on the first day of trial. The Fords contend that this "is precisely why there is no discussion in the record of the instruction on 'Acts in Emergencies' ... when the judge goes over the contemplated instructions with counsel and then asked counsel if there was any other issue pertaining to the jury instructions." Additionally, we point out that Ms. Willis' counsel did not argue for the "Acts in Emergencies" instruction after the judge's second "indiscernible" comment. Instead, Ms. Willis' counsel ac-

knowledged that the judge was "correct" and then pressed her exceptions to instructions 19:3 (assumption of the risk) and 10:4 (aggravation of a pre-existing condition). Ms. Willis' counsel concluded by saying: "So those are [my] *two* exceptions." (emphasis added). Critically, this conclusion does not refer to instruction 18:3 (acts in emergencies).

In our view, it is dubious from the record that Ms. Willis' exception to the jury instructions is preserved. However, even assuming, *arguendo,* that the argument is preserved, we hold that Ms. Willis was not entitled to an "Acts in Emergencies" instruction.

Section 18:3 of the Maryland Pattern Jury Instructions provides:

When the driver of a motor vehicle is faced with a sudden and real emergency, which was not created by the driver's own conduct, the driver must exercise reasonable care for his or her own safety and for the safety of others. The reasonableness of the driver's actions must be measured by the standard of the acts of other drivers of ordinary skill and judgment faced with the same situation. The driver is not required to use the same coolness or accuracy of judgment which is required of a person who has an ample opportunity fully to exercise judgment.

"Whether [a party] was entitled to a sudden emergency instruction turns on whether that issue was generated by the evidence." *Haney v. Gregory,* 177 Md.App. 504, 520, 936 A.2d 388 (2007) (citing *Levine v. Rendler,* 272 Md. 1, 320 A.2d 258 (1974)). In *Haney,* we held that a defendant was not entitled to a sudden emergency instruction because the defendant "did not suddenly find himself in a position of peril; nor was there any evidence that he was required to chose between alternatives." *Id.* at 521, 936 A.2d 388. In particular, Haney was traveling in the "fast lane" when he came over the crest of a hill and was confronted by two vehicles stopped in his lane. *Id.* at 507, 936 A.2d 388. Haney testified that he could not merge to his right because of the presence of other vehicles in that lane. *Id.* at 506, 936 A.2d 388. Haney braked to reduce

his speed, but he was then rear-ended by another motorist, who sued Haney for damages. *Id.* We held that:

> [T]here was no evidence that [Haney] was required to make an immediate choice between alternatives. The only choice that [Haney] was required to make was when to apply his brakes. Under the circumstances here, that is not a basis for a sudden emergency instruction.

*Id.* at 525, 936 A.2d 388.

In so holding, we relied on *Rustin v. Smith,* 104 Md.App. 676, 657 A.2d 412 (1995). In *Rustin,* we concluded, based on a review of the Maryland cases addressing sudden emergency, that "an instruction on the doctrine is appropriate only when there is evidence that the motorist invoking the rule 'took any action in response to the emergency.' " *Haney,* 177 Md.App. at 524, 936 A.2d 388 (citing *Rustin,* 104 Md.App. at 678, 657 A.2d 412). In that case, Rustin was traveling at night on a city street. *Id.* It was raining, which caused water to "sluice" over the roadway. *Id.* Rustin's speed was between 25–30 miles per hour, and he lost control of his vehicle either "because he hit a pothole or, due to the slickness of the road, he hydroplaned." *Id.* Rustin's vehicle was then struck by an oncoming vehicle. *Id.* We held that:

> With respect to Rustin's conduct in response to his losing control of his vehicle, there is no evidence that he had any options, made any decisions, or took any specific action whatsoever to avoid the collision. Although he broadly claims that he tried to retain control, he did not specify what steps he took, or even what options were available. He did not even say he could not respond—that he failed to act—because of the emergency. Rather, the evidence indicates that, once Rustin lost control, the vehicle was wholly uncontrollable.
>
> At some point in every collision, there is always an emergency. That does not mean that an emergency instruction is always appropriate. An 'acts in emergency' instruction is appropriate only where '[t]he jury could have determined ... whether in the light of the alternatives available to him,

and the time available to him to recognize and evaluate those alternatives, [Rustin] made a choice that a reasonable, prudent person would make.' [Citation omitted]. Even if there were an 'emergency,' Rustin took no 'act' and made no 'choice' for the jury to judge in the context of the emergency. Accordingly, we conclude that the circuit court correctly refused to instruct the jury as to 'acts in emergencies.'

*Id.* (citing *Rustin*, 104 Md.App. at 681–82, 657 A.2d 412).

Moreover, we observe that in Maryland, a driver "has no right to assume that the road is clear, but that under virtually all circumstances and all times, he must be reasonably vigilant and must anticipate and expect the presence of others [in his path]." *Belleson v. Klohr*, 257 Md. 642, 649, 264 A.2d 274 (1970). Likewise, "mechanical failures occur along highways in the normal course of travel .... and [o]ccupants of stalled vehicles have the right to make reasonable repairs and need not anticipate that other motorists will entirely disregard their presence." *Id.* at 650, 264 A.2d 274.

Here, Ms. Willis argues that she was faced with a sudden emergency when the vehicle in front of her suddenly veered to the right, thereby exposing Mr. Ford's stopped vehicle in her traffic lane. Much like the defendant in *Haney*, Ms. Willis testified that she could not merge to her right to avoid Mr. Ford's vehicle due to the presence of another vehicle in the right lane. Likewise, Ms. Willis testified that she had no opportunity to make a decision once Mr. Ford's vehicle was visible, stating that she "had no choice but to impact [Mr. Ford's] car." In particular, Ms. Willis provided the following testimony during direct examination:

[MS. WILLIS]: As we were coming closer towards Walters Lane, I noticed the car in front of me abruptly just slammed on it—like immediately slammed on the brakes while we were that speed,[8] and they swerved out of the way. And immediately as they swerved out of the way, I noticed the

---

8. Ms. Willis testified that she was "going the speed limit" and that the speed limit was "about 50, 55" miles per hour.

car in front of me. And as my foot was on the brake, I had no choice but to impact the car.

\* \* \*

[COUNSEL]: How long after the car in front of you swerved to the right lane did you impact the Ford car?
[MS. WILLIS]: It had to be at least a couple of seconds.... It was like, right after.
[COUNSEL]: Okay. And were there cars in your right lane as you were traveling down Pennsylvania Avenue?
[MS. WILLIS]: Yes.

\* \* \*

[COUNSEL]: Okay. And in those seconds [before the collision], did the car in front of you—Mr. Ford's car, can you describe the car to us?
[MS. WILLIS]: I didn't know. It was dark. I didn't see the car. There were no lights on, so I didn't see the car. I was up on it and as my foot was on the brake, I went into the back of the car.

In our view, Ms. Willis was not entitled to an "Acts in Emergencies" instruction because Ms. Willis' own testimony established that she was not required to choose between alternatives. Within a matter of seconds of seeing a vehicle swerve in front of her, Ms. Willis was "up on" Mr. Ford's vehicle and "went into the back of the car." Ms. Willis testified that she never even saw Mr. Ford's vehicle before the collision. Much like in *Rustin*, even if there was an "emergency," Ms. Willis took no "act" and made no "choice" for the jury to judge in the context of the emergency. Accordingly, we conclude that the circuit court correctly declined to instruct the jury as to "Acts in Emergencies."[9]

For the foregoing reasons, we hold that the circuit court did not err in finding that the Fords were not contributorily

___

9. In light of our holding, we do not need to reach the merits of the Fords' alternative argument that an "Acts in Emergencies" instruction is also unavailable if the party seeking the instruction was negligently operating his or her vehicle.

negligent as a matter of law, and, on that basis, denying Ms. Willis' motions for judgment notwithstanding the verdict, and motion for new trial. Likewise, the circuit court did not err in declining to instruct the jury as to "Acts in Emergencies." Accordingly, we affirm the judgment of the Circuit Court for Prince George's County.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**